JONES v. STATE.

4384                                    188 S. W. 2d 131

Opinion delivered June 11, 1945.

*Hugh M. Bland* and *Chas. X. Williams,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

McHANEY, J.   Appellant was convicted of the crime of grand larceny and sentenced to one year in the state penitentiary.

For a reversal of the judgment against him, he urges only one ground, that there was no substantial evidence sufficient in law to corroborate the testimony of the accomplices.

The facts, briefly stated, are as follows: W. M. Guinn, an ordained minister, moved to Booneville, Arkansas, on January 1, 1945. He had contracted with appellant to move him, and he, appellant, did so by sending his truck and driver, one Crenshaw, for this purpose. Among

the household goods and effects so moved were five each of cured hams, shoulders and middlings, of the value of $60 or $70. This meat was stolen on Saturday night, January 6, 1945, from Guinn's garage, and hauled away in a car with diamond tread Goodyear tires. Guinn and others followed or trailed these tire tracks to a house owned by appellant about two and one-half miles north of Booneville. Officer Stanfield left the parties following the tracks and returned to town and found Crenshaw at a filling station with a car that had grease and salt in the back of the car. He took Crenshaw to jail and later picked up one Kiersey and took him out to the house owned by appellant north of town. The meat was not found at this house, but at the barn there was found grease and salt on the hay where the meat had been. Later he contacted appellant and told him that Guinn's meat was stolen and that he had information that he (appellant) had bought some from Crenshaw, and appellant said, "Well, you know I buy and sell anything." Later Guinn contacted appellant who said he understood his meat was stolen. He said he bought some meat and if it was Guinn's he could have it. The meat was found at appellant's home, identified by Guinn as his and it was returned to him. Crenshaw testified that he got the meat at appellant's suggestion; that he went out to Guinn's house alone and took the meat out of the garage; that he went back to town and got Kiersey to help him take it to the house owned by appellant north of town which they did. Kiersey testified that he helped Crenshaw move the meat to the house north of town and that it was put in the barn. He heard Crenshaw talking to appellant at the house, but did not see anyone.

Appellant's defense was that he bought the meat from Crenshaw and did not know it was stolen. The woman living on his place north of town, Ella Sue Adair, said appellant came out to the house about 10 o'clock at night to see about a cow and that later on a car came out and a boy wanted to sell appellant some meat and he told the boy "all right," to put the meat in the barn and he would take it home with him and pay the boy next day.

There are other facts and circumstances in the record, but the above were sufficient corroboration of the testimony of the accomplices to sustain the jury's verdict. The fact that the meat was stolen by appellant's employee, delivered to appellant late at night at an out-of-town house owned by him and found in his possession the next day is sufficient alone to justify the jury's verdict. We have several times held that "the possession of recently stolen property, if unexplained to the satisfaction of the jury, is sufficient to sustain a conviction either of larceny or of receiving stolen property." *Morris* v. *State*, 197 Ark. 778, 126 S. W. 2d 93, where we also said: "We think the fact that appellant was in possession of recently stolen property was sufficient corroboration of the testimony of appellant's accomplices to sustain the conviction." See, also, the recent case of *Krokrich* v. *State*, *ante*, p. 208, 185 S. W. 2d 922. Evidently the jury did not believe the appellant's explanation of his possession of the meat, and neither did they believe his story about being out at the Adair woman's house late at night to see about a cow. How would Crenshaw and Kiersey have known to take the meat out to him two or three miles in the country and deliver it to him late at night, if he had not directed Crenshaw to deliver it to him at the Adair house? Crenshaw could not have known that appellant would be out there looking for a cow or to see about a cow. He must have known that Crenshaw, his mentally subnormal, $2 per day employee, had no meat to sell, and, even if he did have, he would not be trying to sell it to him late in the night time, several miles from his place of business. The evidence amply corroborates the accomplices.

The judgment is, accordingly, affirmed.