SHIPP *v.* STATE

5158                                                    406 S. W. 2d 361

Opinion delivered October 3, 1966

*Jack L. Lessenberry,* for appellant.

*Bruce Bennett,* Attorney General; *H. Clay Robinson,* Asst. Atty. Gen., for appellee.

Ed. F. McFaddin, Justice. Appellant, Johnny Paul Shipp, was charged, tried and convicted of the offense of robbery [Ark. Stat. Ann. § 41-3601 (Repl. 1964)], and brings this appeal. His motion for new trial contains 25 assignments, which we will group and consider in suitable topic headings.

1. *Motion To Quash The Jury Panel.* This was a two-point motion. The first point was that the jurors were not qualified because they had not complied with the recent Amendment No. 51. That point was completely answered in the cases of *Coger* v. *Fayetteville,* 239 Ark. 688, 393 S. W. 2d 622; and *Harris* v. *State,* 239 Ark. 771, 394 S. W. 2d 135; wherein we held that the Act No. 126 of 1965 was valid and was passed to eliminate just such a motion as was here made. The second point of the motion to quash was that Negroes had been excluded from the petit jury panel; and that even though the appellant was a white man, still he was entitled to have Negroes on the jury panel. We see no need to discuss the merits, if any, of this point, because the record here fails to show that the appellant exhausted his peremptory challenges. In such a situation we have held that the appellant cannot complain of the composition of the jury. One such recent case so holding was *Trotter and Harris* v. *State,* 237 Ark. 820, 377 S. W. 2d 14, cert. denied 379 U. S. 890, in which we said:

> "Throughout the years, no rule of procedure has been more consistently adhered to than the rule that a defendant cannot complain of the composition of the jury if he does not exhaust his challenges. In *Benton* v. *State,* 30 Ark. 32, decided in 1875, Chief Justice English pointed out that this rule had stood as a precept of criminal practice in this state, for a period of over 22 years. In a long line of cases, we have consistently upheld the rule to the present time. A cursory examination of our cases reveals over thirty-five criminal cases in which this rule has been cited and adhered to . . ."

II. *Sufficiency Of The Evidence.* The State of-

fered evidence which showed that the appellant had persuaded Lee Edwin Goolsby to rob the Joiner branch of the First National Bank of Osceola, so that the appellant and Goolsby could use the money in a joint venture; that on Monday morning, February 8, 1965, Goolsby went alone to the bank and at the point of a loaded pistol took in excess of $9,000.00; that Goolsby concealed the money at his home and it was subsequently recovered. Goolsby admitted all of this and said that the appellant had suggested the planned robbery. If the evidence of Goolsby, the accomplice, was corroborated to the extent required by law, then the evidence was sufficient to support the appellant's conviction; and that brings us to the issue of corroboration of the accomplice Goolsby.

III. *Corroboration.* Our statute on corroboration is Ark. Stat. Ann. § 43-2116 (Repl. 1964), which reads:

> "A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. . . ."

We have many cases involving the sufficiency of the evidence to corroborate the accomplice. Some of these are: *Knowles* v. *State,* 113 Ark. 257, 168 S. W. 148, Ann. Cas. 1916C 568; *Casteel* v. *State,* 151 Ark. 69, 235 S. W. 368; *Powell* v. *State,* 177 Ark. 938, 9 S. W. 2d 583; and *Underwood* v. *State,* 205 Ark. 864, 171 S. W. 2d 304. In *Underwood* v. *State, supra,* we stated the rule:

> "The corroborating testimony required by this statute must be of a substantial character which, of itself and independently of the statement of the accomplice, tends in some degree to connect the defendant with the commission of the crime, although

such evidence need not in itself be sufficient to support a conviction . . . . Evidence which merely raises a suspicion that accused may be guilty, or which is as consistent with defendant's innocence as guilt is not sufficient . . . . The question of the sufficiency of the corroborating evidence justifying submission of the question of defendant's guilt to the jury must, of necessity, be governed by the facts and circumstances of each particular case, having regard for the nature of the crime, the character of the accomplice's testimony and the general requirements with respect to corroboration."

With this rule thus clearly stated, we come to the evidence in the case at bar. The only evidence to corroborate the accomplice Goolsby was that relating to the rain suit and gloves which Goolsby wore at the time of the robbery.[1] Goolsby testified that appellant purchased a rain suit and gave it to Goolsby with instructions that he wear it in making the robbery; and Goolsby testified that after the robbery he threw the rain suit in a ditch along side the highway. The rain suit was found in the ditch and introduced into evidence. Don Rogers testified that he worked at Graber's Department Store and that on Monday morning, February 8, Johnny Paul Shipp came into the store about nine o'clock and purchased a two-piece rain suit; that Shipp tried on the rain suit; and that Shipp wanted to buy a rain suit with a hood. The witness said the rain suit he sold Johnny Shipp was like the one introduced in evidence; but he could not say that it was the identical one sold to Shipp.

The other and far more substantial corroborative evidence was given by Sheriff William Berryman. He testified that Shipp was arrested and placed in jail; and the Sheriff sent for the witness Rogers, who had sold Shipp a rain suit, and the witness Prince, who had sold Shipp some gloves; that he warned the witnesses that

---

[1]Goolsby testified that the appellant provided the rain suit and gloves and a silk stocking. The rain suit was introduced as an exhibit in the case and is before us on appeal.

they were to say nothing to the appellant; that the next day the appellant sent for the Sheriff, who went to the jail to see the appellant, and here is Sheriff Berryman's testimony:

> "I asked if he wanted to see me. He told me, those people over there looking at him so on, he did buy that rain suit and gloves, but he bought it for the business. I didn't cross-examine or inquire into it any way, just left it at that."

And again the Sheriff testified as to appellant:

> "Q. And he had a note pad in his hand and told you he was the one who bought this rain gear and was the one who bought these gloves?
>
> "A. Yes, sir."

And on cross-examination Sheriff Berryman testified:

> "Q. You are not saying or suggesting to this jury Johnny Shipp said he had bought this particular rain suit?
>
> "A. He said he bought the rain suit and gloves, yes."

Thus the evidence shows that the appellant admitted to Sheriff Berryman that the *particular rain suit in evidence was the one he bought*; but he claimed in his conversation with the Sheriff that he bought the rain suit for use in his business. When the appellant admitted the purchase of the identical rain suit used in the robbery, certainly the appellant admitted enough to corroborate the accomplice. The appellant seeks to leave the impression that Goolsby stole the rain suit from him; but that was a fact question to go to the jury. Without the testimony of Sheriff Berryman the corroboration in this case would be like that in *Scott* v. *State,* 63 Ark. 310, 38 S. W. 339; or *Cook* v. *State,* 75 Ark. 540, 87 S. W. 1176. But with the testimony of Sheriff

Berryman, the evidence of corroboration went to the particular and identical rain suit introduced in evidence, and there was evidence from which the jury could have found—and evidently did find—that appellant bought the particular rain suit which Goolsby wore at the time of the robbery; and this certainly corroborates Goolsby's testimony to the effect that the appellant suggested and planned the robbery.

IV. *Argument Of The Prosecuting Attorney.* The appellant claims that the judgment should be reversed because of the improper argument of the Prosecuting Attorney. In the course of his closing argument the Prosecuting Attorney, in commenting on the matter of corroboration, said:

"... and every fact shows everything Lee Goolsby said about going to Kennett, about drinking coffee, about getting the rain coat, about the stocking; forty-seven different instances I checked, every word he said was corroborated by witnesses the State of Arkansas put on that witness stand."

There was no objection made to that statement at the time it was made; but after the jury had retired[2]

[2]Two pages after the foregoing quoted statement of the Prosecuting Attorney, the transcript shows that the Prosecuting Attorney had concluded his argument and the Court said: "Gentlemen, the reporter will prepare a form of verdict for you to use in this case. If you find the defendant guilty, your foreman, whom you will select, will sign the first form after inserting in the blank space provided the amount of punishment you agree upon not less than three nor more than twenty-one years. If you find him not guilty, your foreman will sign the second form. You may now retire to the jury room to consider your verdict.

"(IN ABSENCE OF THE JURY):

"MR. LESSENBERRY: I want to object to the remark of the prosecuting attorney stating he had personally checked several instances of corroborating Lee Goolsby's statement: that such a statement from the prosecuting attorney becomes so personal and very persuasive with the jury, is highly prejudicial; it cannot be overcome by an admonition of the Court.

"MR. HARRISON: These are points I checked in the case as

the appellant made an objection. The point is now urged that the Prosecuting Attorney was telling the jury that there were forty-seven different instances of corroboration which he knew about. The appellant insists that this is like the case of the Prosecuting Attorney making a remark about evidence which is not in the record. For instance, in *Hughes* v. *State,* 154 Ark. 621, 243 S. W. 2d 70, the Prosecuting Attorney said: ''I have examined the testimony and know so much about it and know things that never get to anybody else.'' We held that such a remark by the Prosecuting Attorney in his argument to the jury was highly improper and reversed the judgment, saying: ''Coming from a sworn official the remark was calculated to make a deep impression upon the minds of the jurymen.'' Some other cases on improper argument are *Todd* v. *State,* 202 Ark. 287, 150 S. W. 2d 46; and *Simmons* & *Flippo* v. *State,* 233 Ark. 616, 346 S. W. 2d 197.

In the case at bar, if the remark by the Prosecuting Attorney was intended to mean that the Prosecuting Attorney knew of forty-seven different instances of corroboration which might not have been shown in the evidence, then of course the remark was improper and most certainly the Court would have ordered it stricken, if objection had been made at the proper time. But if the remark of the Prosecuting Attorney merely meant that in the evidence as developed before the jury there were forty-seven different items of Goolsby's testimony which various witnesses had corroborated in the evidence, then of course the remark was not improper. If objection had been made at the proper time, clarification could have been ordered; but from the record as we have examined it and copied it, it appears that the appellant waited until after the jury had retired before he even made any objection on the point; and we hold that such objection came too late and the point cannot now be urged.

the evidence developed, your honor. He had the same opportunity to check them as I did.

"COURT: Overruled. Exception noted."

IV. *Other Points.* Other assignments in the motion for new trial are urged for reversal of the judgment. We have examined all of them and find none to possess merit.

Affirmed.