Larry PITTS and Terry PITTS *v.* STATE of ARKANSAS

5442 446 S. W. 2d 222

Opinion delivered October 27, 1969

*Lewis D. Jones* and *James D. Emerson, for* appellants.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

GEORGE ROSE SMITH, Justice. On the night of March 2, 1969, two riding horses and two ornate saddles, with some bridles and other tack, were stolen from three separate premises in the Fayetteville area. Charges of burglary and grand larceny were filed against the appellants, Terry Pitts, 27, and his brother Larry, 20. The jury found the defendants guilty on all counts and imposed minimum sentences of one and two years, to run concurrently. On appeal the controlling issue is whether the testimony of an asserted accomplice, Paul Vanderboom, 18, was sufficiently corroborated.

The evidence must be examined in some detail. The Pitts brothers formerly lived with their father in Springdale, across the street from young Vanderboom and his mother. At the time of the offenses, however, Larry Pitts was living with his father in Houston, Texas, and Terry was living with his wife and child in Houston.

About a week before the night in question Terry and his wife Cheryl had some sort of dispute that led to a brief separation. Larry, at his sister-in-law's request, took her and her belongings to Oklahoma City, using a new pick-up truck and a four-stall horse trailer that were both owned by the Pitts brothers. On Tuesday,

February 25, Larry took the horse trailer to Siloam Springs, Arkansas, and parked it at the home of friends, the Buchanans, because Cheryl would not let him leave it at her place in Oklahoma City.

Later in the week Terry went to Oklahoma City, as did Paul Vanderboom, who was a friend of Larry's and who had visited Larry in Texas. On Saturday night, March 1, the three youths drove to Fayetteville in the pick-up and spent the night at a motel. Larry signed the register as Larry Tyler. At the trial he was not asked why he used that name, but apparently it was because his brother made his living as a singer under the professional name Terry Tyler. On Sunday afternoon the three checked out of the motel, drove to Siloam Springs, and visited with Mrs. Buchanan and her daughter until about six o'clock. The three young men then drove off in the truck, leaving the trailer still parked in the Buchanans' yard.

Here the testimony for the State and that for the defense diverge completely. Terry and Larry say that Paul Vanderboom had asked to borrow the pick-up so that he could have a date in Springdale and then visit his father in Monett, Missouri. Terry, having agreed to lend the truck to Paul, telephoned an aunt in Oklahoma and asked her to meet him and Larry at the Arkansas line—about a mile from Siloam Springs—and take them to Oklahoma City so that Terry could try to patch things up with his wife. The Pittses say that when they left the Buchanans' house Paul drove them to the State line, where their aunt met them. Larry testified that in changing to clean trousers he inadvertently left his billfold in a pair of trousers that remained in the truck. Both the aunt and Cheryl corroborated the appellants' statement that they accompanied their aunt to Oklahoma City.

Paul—unquestionably an accomplice if his testimony was true—gave a wholly different account. Ac-

cording to Paul, the Pitts brothers had promised to pay him $50 a day to help them steal horses and riding gear. He says that upon leaving the Buchanan home in Siloam Springs he was instructed to drive to Fayetteville, where he successively dropped the Pitts boys at two different places to enable them to steal saddles. He says that on the second occasion they took a pair of bolt cutters with them. Paul next dropped the Pitts brothers and the saddles at a third place, where they were to steal horses. At their direction Paul drove back alone to Siloam Springs to get the horse trailer.

Paul testified that upon returning to Fayetteville to rejoin Terry and Larry he first parked behind a small church, but he was observed there by a group of teenagers in a passing car. Paul then drove to Agri Park, with the teenagers following him. One of the teenagers testified that he and his friends telephoned the police, thinking that Vanderboom might be about to burglarize the church.

In answer to that call Officer Wood went to Agri Park, where he found the pick-up truck, locked and unattended, and the trailer. The officer observed some boots and blue jeans in the cab of the truck, with a billfold on the dashboard. He also saw a pair of bolt cutters in the front stall of the trailer. In a few moments Vanderboom appeared and stated (falsely) that the truck and trailer were his. Officer Wood became suspicious and took the boy to police headquarters for questioning. There he was found to be in possession of his own billfold and also one belonging to Larry Pitts. On the witness stand Paul testified that he did not know why Larry's billfold was in his pocket.

Officer Wood left Paul at headquarters and returned to the park, where he found that the truck had been broken into during his brief absence. There were horse hoofprints around the truck that had not been there a few minutes earlier. The boots, blue jeans, and

billfold were missing from the cab, and the bolt cutters were missing from the trailer. The stolen horses and saddles were recovered the next day.

There is no dispute about the applicable rules of law. Under the statute a conviction for a felony cannot be had upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark. Stat. Ann. § 43-2116 (Repl. 1964). In construing the statute we have held that the test of the sufficiency of the corroboration is whether, "if the testimony of the accomplice is eliminated from the case," the other evidence establishes the required connection of the accused with the commission of the offense. *Froman* v. *State*, 232 Ark. 697, 339 S. W. 2d 601 (1960). Corroborating evidence which merely raises a suspicion of guilt is not enough. *Underwood* v. *State*, 205 Ark. 864, 171 S. W. 2d 304 (1943).

Here the corroborative proof falls short of establishing the necessary connection between the appellants and the commission of the offenses. We mention only the salient points. The Pitts brothers owned the truck and trailer, but ownership of a vehicle used in the commission of larceny does not sufficiently corroborate the testimony of an accomplice. *Thompson* v. *State*, 207 Ark. 680, 182 S. W. 2d 386 (1944). That Larry registered at the motel on Saturday night under an assumed name might certainly be regarded by the jury as a suspicious circumstance, but that fact obviously does not suggest either directly or by inference that Larry and his brother were guilty of stealing horses and saddles on the following night.

Vanderboom's possession of Larry's billfold shows nothing more than the admitted fact that the two had

been together. It throws no light whatever upon the vital question: Who stole the horses and saddles?

It is reasonably certain that young Vanderboom had help from someone in the commission of the crimes. It may fairly be inferred that his accomplices broke into the pick-up truck while he was being taken to the police station and spirited away evidence that might have led to their identification. But there is no basis except suspicion for saying that those confederates were Terry and Larry Pitts. Indeed, it is a striking fact that of the thirteen witnesses who testified for the State young Vanderboom was the only one who claimed to have seen the Pitts brothers anywhere in the State of Arkansas during the several hours involved in the perpetration of the crimes.

Finally, the bolt cutters. The owners of the two tack rooms that were burglarized testified that the entries were effected by the cutting of a chain in one instance and of a hasp in the other. Officer Wood testified positively that a pair of bolt cutters was in the horse trailer when he first inspected it. Larry Pitts admitted his ownership of the bolt cutters, explaining that he had gotten them several weeks earlier to build a fence with. If that were all the proof it might be said that the State had established a positive connection between the accused persons and an item of equipment used in the commission of the crimes. See *Shipp* v. *State,* 241 Ark. 120, 406 S. W. 2d 361 (1966).

That, however, is not all. Officer Wood actually eliminated the bolt cutters as a factor in the case when he testified positively that they were in the front stall *of the horse trailer* when he first examined it and that they had been taken *from the horse trailer* when he returned to Agri Park. Yet Vanderboom says that the bolt cutters were used in the thefts at a time when the horse trailer was thirty miles away in Siloam Springs. He does not suggest that he himself transferred the bolt

cutters from the pick-up truck to the trailer when he went back to Siloam Springs for the latter vehicle. To the contrary, he testified that he thought the bolt cutters were in the truck when he was detained and taken to police headquarters for questioning. Thus Officer Wood's unequivocal testimony, far from corroborating Paul's accusations, actually demonstrates that the Pitts brothers could not have used the bolt cutters at the time and place specified in Paul's testimony. It will not do, of course, to say that Officer Wood may have been mistaken, for in that case the required corroboration would be lacking.

Needless to say, we do not pass upon the veracity of any of the testimony heard in the court below. We are convinced, however, by our study of the record that the State failed to adduce sufficient evidence to satisfy its burden of corroborating Vanderboom's testimony.

Reversed and remanded.

HARRIS, C. J. and FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. While I agree that no single act treated in the majority opinion would have been sufficient corroboration of the accomplice Vanderboom, I think that when all acts of the appellants are considered together a jury question was presented. Corroboration may be circumstantial as well as direct. *Mullen* v. *State*, 193 Ark. 648, 102 S. W. 2d 82.

Circumstances here are:

Appellants spent the night, preceding that on which the crimes were committed, with the accomplice in a motel in Fayetteville into which one of them registered under a fictitious name and address. Vanderboom's home was only a short distance away in Springdale. The appellants and Vanderboom were together in Siloam Springs at least until 6:00 p.m. on the night the crimes were committed. A billfold carrying the identifi-

cation of Larry Pitts was in the possession of Vanderboom when he was arrested. Articles which would have tended to incriminate appellants, that is, a billfold and clothing said by Vanderboom to be that of Terry Pitts, had disappeared from the pickup truck between the time Vanderboom was arrested and the time when the arresting officer returned. A pair of bolt cutters belonging to Larry Pitts had also disappeared from a horse trailer attached to the pickup truck. There were horse hoofprints around the truck that had not been there when the officer was first at the scene. The pickup truck and horse trailer belonged to appellants. The truck keys were in Vanderboom's possession.

It seems to me that all of these circumstances, taken together, constituted sufficient evidence to make a jury question as to the sufficiency of the corroboration. See *McClure* v. *State*, 214 Ark. 159, 215 S. W. 2d 524. Presence of the accused in the proximity of the crime, opportunity, association with persons involved in such a way as to suggest joint participation, possession of instruments probably used to commit the offense are all relevant facts in determining whether statements of an accomplice are sufficiently corroborated. *Moore* v. *State*, 30 Ala. App. 304, 5 So. 2d 644 (1941); *Cawley* v. *State*, 166 Tex. Crim. 37, 310 S. W. 2d 340 (1957); *State* v. *Mathiasen*, 267 Minn. 393, 127 N. W. 2d 534 (1964). I would affirm the judgment.

HARRIS, C. J., and JONES, J., join in this dissent.