Sammy S. JACKSON *v.* STATE of
Arkansas

CR 73-152                                    507 S.W. 2d 705

Opinion delivered April 15, 1974

*Tackett, Moore, Dowd & Harrelson*, by: *John O. Moore*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Sammy S. Jackson asks us to reverse his conviction of robbery on two grounds. He first contends there is not sufficient corroboration of witnesses who testified to facts which would make them accomplices. We find the corroborating evidence sufficient.

About 11:00 a.m. on November 25, 1972, two men wearing ski masks robbed Kenneth Satterfield and others in the office of Satterfield Oil Company in Texarkana. One of the robbers brandished a pistol during the robbery. The two robbers, after causing Satterfield and the others to lie on the

floor, walked directly into the room where Satterfield kept money.

James Andrews, after having pleaded guilty to the robbery, testified against Jackson. He implicated Jackson by relating substantially the following:

> Andrews had been paroled from the penitentiary to Jackson in October, 1972, and had been employed by Jackson at the Handy-Dandy Service Station up until the time of the robbery. Jackson and Andrews went to Pine Bluff the night before the robbery to pick up Ollis Heard, who also participated in the robbery. Heard and Andrews spent the night in a motel in Texarkana, where Jackson picked them up the next morning and took them by a store at which Andrews bought three "stocking" or ski masks, later worn during the robbery. Jackson then took Heard and Andrews to the back of the Satterfield Oil Company building, and gave Andrews a .38 caliber pistol but stayed in his truck while Andrews and Heard robbed Satterfield and the others in the place. When Andrews and Heard left, they went through a wooded section toward a road where they were to meet Jackson. They did not find Jackson at the appointed place. They buried the masks, a shirt worn by Andrews, the money and the pistol in the woods. Jackson had told Andrews where the money was kept by Satterfield and that Satterfield carried large sums on his person. Later Andrews went to the Handy-Dandy Station. He changed his clothing, and was subsequently arrested there.

Ollis Heard, who was arrested before he left the woods, for the most part corroborated the testimony of Andrews as to what took place prior to his own arrest. Heard stated he was with Jackson prior to 1967 when Jackson bought the pistol given to Andrews just before the robbery. Heard also testified Jackson had planned the robbery, had discussed it with him two or three times and had told him where the money would be.

A. P. Miller testified that the records of the House of Guns, at which he had been employed by his father-in-law

Van Tittle, who died in 1968, disclosed that the pistol, a .38 caliber Smith and Wesson, had been sold to a Samuel L. Jackson on December 12, 1966.

Of course, the evidence in corroboration of an accomplice must tend, independently, to connect the accused with the commission of the offense. Ark. Stat. Ann. § 43-2116 (Repl. 1964). The use of the pistol owned by Jackson had some tendency, standing alone, to connect Jackson with the offense. The circumstances here are decidedly different from those in *Cockrell* v. *State*, 256 Ark. 19, 505 S.W. 2d 204 (1974), the latest case in which we found the corroborating testimony to be insufficient. In that case, there was no evidence that the defendant's automobile, in which the stolen property was found, had been used in the burglary and larceny, and there was evidence that the alleged accomplice, who had been apprehended while driving the automobile, had considerable freedom in the use of it over some period of time. This case more nearly resembles *Shipp* v. *State*, 241 Ark. 120, 406 S.W. 2d 361, in which the fact that the'.defendant, on the day before a robbery was committed, had purchased the clothing worn by the person committing it, was held to be sufficient corroboration. But we have held that evidence of a defendant's ownership of a motor vehicle used in a larceny is insufficient corroboration. *Pitts* v. *State*, 247 Aek. 434, 446 S.W. 2d 222. However, there is more here.

Jackson had been employed by Satterfield to operate the Handy-Dandy Station. He had been in the Satterfield office on numerous occasions to bring money received in the operation of that station. Philip Burkhalter, a deputy sheriff investigating the robbery a short time after it occurred, found Jackson about three-fourths of a mile from the oil company in a pickup truck. When asked what he was doing there, Jackson said that he was looking for some horses.

It has been well established that corroboration may be by circumstantial evidence. *Jones* v. *State*, 254 Ark. 769, 496 S.W. 2d 423; *King* v. *State*, 254 Ark. 509, 494 S.W. 2d 476. Presence of an accused in proximity to the crime, opportunity, association with persons involved in a manner suggesting joint participation and possession of instruments used in the commission of the offense are relevant facts in determining

the sufficiency of the corroboration. *State* v. *Mathiasen*, 267 Minn. 393, 127 N.W. 2d 534 (1964); *Cawley* v. *State*, 166 Tex. Cr. R. 37, 310 S.W. 2d 340 (1957); *Moore* v. *State*, 30 Ala. App. 304, 5 So. 2d 644 (1941). All these pertinent factors weighed collectively, instead of merely raising a suspicion of defendant's guilt, do constitute substantial circumstantial evidence tending to connect him with the crime.

The second point for reversal relates to procedures substantially identical with those followed by the court in *Martin* v. *State*, 254 Ark. 1065, 497 S.W. 2d 268, and *Carter and Burkhead* v. *State*, 255 Ark. 225, 500 S.W. 2d 368 (1973), where the trial judge, prosecuting attorney and defense counsel went into the jury room when inquiries by members of the jury were made to the court. This case was tried before our decisions were made in those cases. Our conclusion in *Martin* that appellant's right to be present was waived by his counsel and that his rights were not prejudiced is fully applicable here. We expressed the hope in *Martin* that our admonition in *Andrews* v. *State*, 251 Ark. 279, 472 S.W. 2d 86, of the mandatory nature of the requirement of Ark. Stat. Ann. § 43-2139 (Repl. 1964) that inquiries of the court by jurors must be made and answered in open court would be heeded and the procedure strictly followed. In *Carter and Burkhead*, we felt confident that the caveat in *Martin* would suffice to prevent resort to communications between the judge and jury outside the open courtroom. Although we have not held, and do not intend to hold, that this right of defendant cannot be waived, we take this means of giving notice that we will carefully scrutinize every case tried after the date of our decision in *Martin* (July 23, 1973) to determine whether there has been a waiver of defendant's right to have such proceedings held only in open court, and that all reasonable doubts will be resolved by us against waiver.

Since we find no reversible error, the judgment is affirmed. Motion of appellant's counsel for permission to withdraw is granted.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. I disagree with the majority's assertion that the record here is "substantially

identical" with those followed by this court in *Martin* v. *State*, 254 Ark. 1065, 497 S.W. 2d 268 (1973), and *Carter and Burkhead* v. *State*, 255 Ark. 225, 500 S.W. 2d 368 (1973). The record in the *Martin* case, as copied in the opinion recites:

> "Thereupon, by agreement, the court and the attorneys entered the jury room, and the following proceedings were had and done . . . ."

The record in the *Carter and Burkhead* case, at page 171 thereof, recites that the first invasion of the jury room was "upon agreement of all parties." (See appellant's Abstract and Brief page 74). In this case there is no recitation of an agreement.

In *Lewis* v. *United States*, 146 U.S. 370, 13 S. Ct. 136, 36 L. Ed. 1011 (1872), when considering a similar problem the United States Supreme Court said:

> " . . . [A]nd it appears to be well settled that where the personal presence is necessary in point of law, the record must show the fact . . . ."

Aside from the fact that I do not think the record here shows a waiver of appellants' right to be present, there is still another reason to hold the proceedings erroneous—*i.e.*, it violated the "right to a public trial." The record here shows that the trial judge and trial counsel made numerous trips into the jury room. Irrespective of who attended the trial whether they be friends and relatives of the prosecution or the upright citizens and relatives of the appellant, none of them will be in a position to dispute any accusations that the accused may make as to what transpired in the jury room during any one of the many trips. While the cold record of the court reporter may take down the words that were stated, it cannot reach those inflections of the voice nor the so-called "body language" which occasionally speaks louder than words.

A public trial requires neither great skill nor Herculean endeavor. It is a simple matter of placing all the facts and the applicable law upon top of the table in broad open view before the accused, the jury and the public. The fact that

every criminal trial is subject to contemporaneous review in the forum of public opinion has generally been considered an effective restraint on possible abuse of judicial power, *United States v. Kobli,* 172 F. 2d 919 (3rd Cir. 1949). It also enables spectators to learn about their government and to acquire confidence in their judicial remedies.

For the reasons stated I respectfully dissent.