Don E. GREEN *v.* STATE of Arkansas

CR 78-191                                        577 S.W. 2d 586

Opinion delivered February 26, 1979
(In Banc)
[Rehearing denied March 26, 1979.]

*Robert L. Lowery,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jesse L. Kearney,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant and three codefendants were charged with robbery of the Brockwood Exxon Service Station and Church's Fried Chicken on 12th Street in Little Rock, Arkansas. The three codefendants pleaded guilty before the trial date of June 30, 1978. Appellant's motion to sever the two counts of robbery because no scheme or plan would be shown by the state was denied.

The trial court granted appellant's motion for dismissal of the charge relating to the Exxon Station but permitted the charge relating to Church's Fried Chicken to go to the jury.

Upon completion of the state's case appellant moved for a directed verdict relating to the Church's Fried Chicken incident. The motion was denied. The appellant did not introduce any testimony and rested after the motion was denied. The jury found appellant guilty and fixed his punishment at 6 years' imprisonment.

On appeal two points are argued: (1) The court should have granted a severance of the charges; (2) There was insuf-

ficient evidence to support the conviction.

The only evidence presented by a codefendant was that they planned to rob the Exxon Station and when it produced only $5 they subsequently decided to rob Church's Fried Chicken. The testimony relating to the robbery of the Exxon Station by David Zimmerman was that he saw four people in a car at the Exxon Station. He could not identify any of them nor could he tell if the people were black or white. Mr. Baker, the victim at the station, saw two people with stockings over their heads. He didn't see the other two people and could not identify any of them or the vehicle they were in. Appellant did not testify nor did he give a statement relating to the Exxon Station robbery. Appellant's statement to the officers with reference to the Church's Fried Chicken robbery was that he asked the codefendants to take him home. "I asked them to take me home, and on the way home I asked them to stop by Church's Chicken, and they stopped at 12th and Fair Park. I bought a box of chicken and a coke. We parked on the side of the business. I went back to the car. They had a shotgun and a rifle out and they said that they were going to rob the place. I told them to take me home first. They said, 'No. As long as we are here, we just as well do it.' They said I wouldn't have to get out of the car. I stayed in the car and Billy stayed in the car and got under the steering wheel."

Was the evidence sufficient to sustain a conviction of aggravated robbery of Church's Fried Chicken? Again the codefendant testified that the four of them decided to go rob the Exxon Station and did. They planned to split the money four ways. He also stated there never was a plan to rob another place until after the waterhaul at the Exxon Station. He testified he had pleaded guilty to the robberies of both places and had been sentenced. Other evidence tended to show the robbery occurred but none of it identified the appellant. The only other evidence was the statement of appellant wherein he steadfastly denied any part of the Church's Fried Chicken robbery. The only fact possibly connecting him with it was that he was there. In his statement appellant insisted he requested the codefendants to drive him home after he found out they planned the second robbery.

The question of evidence necessary to corroborate an accomplice's testimony to the extent of allowing a case to be submitted to a jury is necessarily governed by the facts and circumstances of each case as it is presented. Evidence which is merely suspicious in nature is insufficient, or if it is as consistent with innocence as guilt, it is not enough to submit the question of the defendant's guilt to the jury. *O'Neal* v. *State*, 192 Ark. 1178, 96 S.W. 2d 780 (1936); *Underwood* v. *State*, 205 Ark. 864, 171 S.W. 2d 304 (1943). The corroborating evidence must tend to connect the defendant to the commission of the offense. It is not sufficient to show the offense was committed and the circumstances thereof. *Pitts* v. *State*, 247 Ark. 434, 446 S.W. 2d 222 (1969). We stated in *Dunn & Whisenhunt* v. *State*, 256 Ark. 508, 508 S.W. 2d 555 (1974):

> Aside from the testimony of the accomplice Roberts, there is no other testimony at all linking the appellants with the robbery of Mr. Corley. The fact that Dunn & Whisenhunt were seen riding in the same automobile with Roberts, as related under the facts and circumstances of this case, is not sufficient corroboration to sustain their conviction.

We make the same statement regarding the facts and circumstances in this case. Appellant had the additional burden of having been exposed to the robbery evidence for which he was acquitted. We still adhere to the principle that a man is innocent until proven guilty. The mere presence of a person at the scene of a crime is not proof of his guilt, otherwise the customers or employees at Church's Fried Chicken might be in appellant's place.

Under the circumstances of this case, we are unable to find any corroborating evidence to support the codefendant's testimony.

This disposition makes the severance issue moot.

Reversed and dismissed.

HARRIS, C.J., and FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I find the evidence corroborating the testimony of the accomplice sufficient to present a jury question. Samuel T. Bernard, an accomplice in the two robberies, testified that: he and Donald Green were together when they ran into Frank Turner and Billy Scott; they went to a North Little Rock club and Frank asked if they wanted to make some money, and said he knew the place they could knock off; all agreed and got in Bernard's car; they were to split the money four ways and go to Helena until everything blew over; Green and Bernard served as lookouts while Frank and Billy went to the Exxon station at 65th and Geyer Springs, taking a sawed-off shotgun and a rifle; when Frank and Billy returned, they said they didn't get much; all of them went to Church's Chicken Place and backed into an alley; Frank told Don to go buy something and see how much money was in the cash register; Don went and bought something and returned to the car and sat down; he said something Bernard did not hear and Frank and Bernard got out of the car, one taking the rifle and the other the shotgun; Bernard went to the back of the building and Frank to the other side; Bernard said that either Green or Billy got under the steering wheel; he heard a shotgun blast as soon as Frank went arou d the building; after the robbery, he and Frank jumped into the car; Green was driving, but not in a manner to suit Bernard, so he switched places with Green; they let Frank and Billy (who were talking about "hitting something else up") out of the car at 21st and Elm Streets.

Appellant made a statement which was introduced in evidence. He said that he was with the others at the club, that he asked them to stop at Church's Chicken at 12th & Fair Park, where they parked at the side of the building and that he bought a box of chicken and a coke, after which he returned to the car and "they" had a shotgun and rifle out and said "they" were going to rob the place. He stated that he asked "them" to take him home first, but "they" refused, saying that as long as they were there, "they" might as well do it. He said that he stayed in the car and that Billy got under the steering wheel and that, after Bernard and Frank came running back to the car, "they" took him straight home.

Charles Wesley Jones, an employee of Church's

Chicken, testified that after he had waited on a customer, a man came in wielding a gun and demanding that money be put in a bag. Jones slipped as he turned and the man fired a shot and ran.

It was only necessary that the evidence go beyond a showing that the crime was committed and the circumstances thereof and that it tend in some degree to connect the defendant with the crime. *Anderson* v. *State,* 256 Ark. 912, 511 S.W. 2d 151; *Olles* v. *State,* 260 Ark. 571, 542 S.W. 2d 755. The evidence may be circumstantial. *Olles* v. *State,* supra. It may be slight and not altogether satisfactory and convincing, if it is substantial. *Olles* v. *State,* supra; *Klimas* v. *State,* 259 Ark. 301, 534 S.W. 2d 202. It must be directed toward proving a fact in issue and not *merely* toward discrediting a witness or corroborating his testimony. *Olles* v. *State,* supra. But if the accomplice is corroborated as to particular material facts, the jury may infer that he spoke the truth as to all. *Olles* v. *State,* supra. The acts, conduct and declarations of the accused before or after the crime may furnish the necessary corroboration. *Olles* v. *State,* supra.

In *Ahart* v. *State,* 200 Ark. 1082, 143 S.W. 2d 23, it was held that the sufficiency of the corroborating evidence is always for the jury. Although this statement, taken out of context, appears to be an overstatement, it is significant in light of the evidence there which tended to corroborate the testimony of the accomplice in a cattle theft. The mother of the accomplice testified that the defendant came to her house with her son between 11:00 and 12:00 the night before the stolen cattle were found at her house and spent the night there. Another witness admitted having made a statement to the sheriff and deputy prosecuting attorney in which he had said that the defendant and the accomplice asked the witness to haul some cattle for him, but he refused.

The corroboration by appellant's own statement in the case at hand is at least as strong as that in *Ahart*. Appellant was present when the crime was committed. He made a purchase which, according to the accomplice, was a part of the plan. As soon as he did so, the robbery took place. Knowing that it was going to take place, he went and took his seat

in the getaway car. Those circumstances are much more consistent with guilt than innocence.

Comparison of the position of the employees of the place robbed with that of appellant will not stand under close examination. None of the employees came to the place or left it with the robbers. None of them sat in the "getaway" car knowing that a robbery was taking place and the companions with whom he came to the scene were doing it. None of them could have been expected to disassociate himself from the criminal enterprise. But if appellant were not part of it, and wanted no part of it, it would only be reasonable to expect that he would. The idea that an innocent person would wait for a robbery to be carried out so he could get a ride home with the robbers approaches ridiculosity.

The corroborating evidence here is much more incriminating than that in *Shipp* v. *State*, 241 Ark. 120, 406 S.W. 2d 361, where the question of corroboration was disposed of without difficulty, viz:

> Thus the evidence shows that the appellant admitted to Sheriff Berryman that the *particular rain suit in evidence was the one he bought;* but he claimed in his conversation with the Sheriff that he bought the rain suit for use in his business. When the appellant admitted the purchase of the identical rain suit used in the robbery, certainly the appellant admitted enough to corroborate the accomplice. The appellant seeks to leave the impression that Goolsby [the accomplice] stole the rain suit from him; but that was a fact question to go to the jury. Without the testimony of Sheriff Berryman the corroboration in this case would be like that in *Scott* v. *State*, 63 Ark. 310, 38 S.W. 339; or *Cook* v. *State*, 75 Ark. 540, 87 S.W. 1176. But with the testimony of Sheriff Berryman, the evidence of corroboration went to the particular and identical rain suit introduced in evidence, and there was evidence from which the jury could have found — and evidently did find — that appellant bought the particular rain suit which Goolsby wore at the time of the robbery; and this certainly corroborates

Goolsby's testimony to the effect that the appellant suggested and planned the robbery.

The words of our opinion in *Dyas* v. *State,* 260 Ark. 303, 539 S.W. 2d 251, are applicable here. We said:

> We have held in a somewhat similar case in which the defendant was accused of murder during the commission of a robbery that the testimony of the defendant in which he admitted that he was present at the crime, but denied participation in the homicide, was itself sufficient corroboration to satisfy the statute and support a conviction. Ark. Stat. Ann. § 43-2116. *Ford* v. *State,* 205 Ark. 706, 170 S.W. 2d 671. While corroborating evidence must do more than raise a suspicion of defendant's guilt, it need not be direct, but may be circumstantial so long as it is substantial and tends to connect the defendant with commission of the offense. *Jones* v. *State,* 254 Ark. 769, 496 S.W. 2d 423. Presence of an accused in proximity to the crime, opportunity, association with persons involved in a manner suggesting joint participation and possession of instruments used in the commission of the offense are relevant factors in determining the sufficiency of the corroboration by circumstantial evidence. *Jackson* v. *State,* 256 Ark. 406, 507 S.W. 2d 705.
> ***

It might well be that were we jurors, we would say that the state had not proven appellant's guilt beyond a reasonable doubt. We are not and should not act as such. We cannot, and should not, say that a reasonable juror could not conclude that the statement of Green tended to connect him with the crime.

I am authorized to state that the Chief Justice and Mr. Justice Byrd join in this opinion.