John SHARRON *v.* STATE of Arkansas

CR 76-213                                           556 S.W. 2d 438

Opinion delivered October 17, 1977
(Division I)

*C. W. Knauts,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Robert J. Govar,* Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. John Sharron appeals from a conviction of grand larceny and the nine-year sentence imposed.

Appellant Sharron had been hired by Dr. E. J. Cruse, the prosecuting witness, to paint some barns on his farm. Dr. Cruse testified that appellant took a Farmall tractor from his farm without his permission. Appellant testified he first offered to buy the tractor but Dr. Cruse told him it had not been run for years and to take it. Appellant was under the impression the tractor had been given to him.

Appellant first contends the State sought to prejudice him by repeatedly asking improper questions which tended to show appellant to be a swindler and scoundrel.

Our cases support the view that error caused by the admission of improper evidence is generally cured by sustaining an objection thereto, followed by an admonition to the jury to disregard it. See *Milam* v. *State,* 253 Ark. 651, 488 S.W. 2d 16 (1972), and *Thompson* v. *State,* 249 Ark. 36, 458 S.W. 2d 40 (1970). Where, however, counsel follows a continuous course of conduct in which incompetent questions are repeatedly asked with the knowledge that they are improper, the prejudice resulting therefrom may be so great that an admonition to the jury is insufficient. 109 A.L.R. 1089 (1937). Offering improper evidence, or asking improper questions, as ground for new trial or reversal, states *inter alia:*

> * * * Much of this misconduct has consisted of knowingly asking improper questions. In many cases the attorney complained of has persistently pursued a wholly unjustified and prejudicial course of interrogation, notwithstanding objections made and sustained, clearly calling to his attention, if such a thing could be deemed

necessary, that the questions asked were without any plausible legal foundation. Reversals have frequently been granted in cases of that extreme character.

Improper questions may be prejudicial in various ways, including the following: They may plainly convey information excluded by the rules of evidence; may hint at the existence of a significant though inadmissible facts, with or without a suggestion as to their exact nature; may, by the assumptions therein contained, and notwithstanding the answers being prevented, impress upon the jury, by a mere show of proof, matters which are not admissible in evidence and which perhaps could not be proved, as inferred, even if opportunity were afforded; and may, by reason of the objections made, emphasize the facts suggested more effectively than might be done by answers admitted without objection.

The record reflects that the State on numerous occasions sought to place irrelevant testimony before the jury and when a timely objection was interposed, the question would then be withdrawn. This occurred at least six times, and, in addition, the court sustained objections to at least eight improper questions. The testimony of Mrs. Joan Cruse, wife of the prosecuting witness, illustrates one example of this procedure.[1]

We also note the testimony of four of the State's witnesses, A. F. Ennison, Frank Bragg, Thelma Pickney and Elbert Callahan. Each of these witnesses had previous business transactions with appellant. The following

---

[1]PROSECUTING ATTORNEY:

Q. When you got back to the house; by the way, talking about this other painting, what kind of job did you get out of it?

A. About the worst I ever saw.

BY MR. HUDSON:

Objection, that has no bearing on the matter.

MR. BLANKENSHIP:

I withdraw that.

transpired during the direct examination of Witness Callahan:

Q. During that time I ask you whether or not you paid him [John Sharron] to do any work over there around the camper factory?

A. Well, I made some advances on a contract, yes.

Q. Did he perform what he was supposed to do for the money?

A. No, sir.

Q. Did he keep putting you off and telling you he would . . . .

BY MR. HUDSON:

Objection, Your Honor.

BY MR. BLANKENSHIP:

I withdraw it. I have nothing further.

The State questioned the other three of these witnesses concerning acts of wrongdoing or possible thefts committed by appellant not connected with this charge. During the course of the State's examination of these four witnesses a number of appellant's objections on the ground of irrelevancy were sustained. When the last of the four had concluded his testimony a conference occurred at the bench. Thereafter the jury was instructed to disregard the testimony of these four witnesses.

However, we are convinced that appellant's trial was tainted by such irrelevant and prejudicial testimony that no admonition to the jury could completely remove it.

We also agree with the contention that the trial court permitted the State to engage in improper cross-examination of appellant. The State sought to adduce evidence of other

criminal activity by appellant in order to impeach his credibility as a witness.

The State did not ask appellant if he had previously been convicted of a crime or if he had committed any act of larceny. Instead, appellant was asked, *inter alia,* if he had "beaten" Mrs. Pickney out of a trailer, if he had "beaten" Glen Lawson out of an ice cream machine and if he had "cheat[ed]" the camper factory at Black Rock out of a riding lawnmower, all of which appellant denied. Other questions propounded by the State to appellant were couched in words sufficient to convey to the jury that appellant engaged in shady business transactions and cheated others out of money and other property.[2] Appellant was asked several times if he mixed gasoline with the paint that he used on various jobs, a practice which appellant continuously denied.

It is impermissible to introduce testimony of suspicious circumstances and nothing more which may indicate guilt when attempting to introduce evidence of the commission of other crimes. See *Sims* v. *State,* 252 Ark. 147, 477 S.W. 2d 825 (1972).

Although the prosecution has wide latitude in cross-examining witnesses and may employ every legal means to impeach their credibility, we find here the questioning exceeded proper bounds.

It is also contended that appellant should have been permitted more extensive cross-examination of Dr. Cruse. Dr. Cruse testified the tractor was worth between $700 and $800 at the time it was taken and was kept in "A-1 condition" by his mechanic. Appellant, however, testified that the tractor had not been run for a long time, that it was junk and that he

---

[2]Q. Did you ever get around to paying Mr. Ennison for the pump parts that you got from him?

BY MR. HUDSON:

Objection, that has nothing to do with this case.

BY MR. BLANKENSHIP:

I will withdraw that question.

spent a considerable sum of his own money in fixing it up before selling it for $200. In cross-examining Dr. Cruse, appellant attempted to establish whether a mechanic had maintained the tractor while it was in Dr. Cruse's possession, but the cross-examination was cut short.

The statute under which appellant was tried provides the stolen property must be worth $35 or more in order to support a conviction of grand larceny. Ark. Stat. Ann. § 41-3907 (Since repealed). The value of $35 or more must be proved beyond a reasonable doubt. *Courtney* v. *State,* 252 Ark. 620, 480 S.W. 2d 351 (1972). If the tractor was not in shape and had not been repaired by Dr. Cruse's mechanic, and, in fact, was not running, appellant had a right to attempt to bring this out on cross-examination since a jury might have concluded that the tractor had little or no valud whatsoever. On retrial appellant should be allowed to develop this point more fully.

Appellant's last contention is that the cross-examination of his wife, Janet Sharron, was improper. We find it unnecessary to discuss this issue since it is not likely to arise on retrial.

Reversed and remanded.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HICKMAN, JJ.