Johnny ALLISON and CASTLE INDUSTRIES
OF ARKANSAS, INC. *v.* Archie O'DELL
and Wife, Norma O'DELL

77-370                                      565 S.W. 2d 438

Opinion delivered May 15, 1978
(Division II)

*Brazil & Roberts,* for appellants.

*George F. Hartje,* of *Hartje & Burton,* for appellees.

GEORGE HOWARD, JR., Justice. Appellants seek reversal of the trial court's action in dismissing appellants' complaint for specific performance of an option given by appellees to purchase real property on the grounds that appellants had not exercised their acceptance within the time period prescribed by the parties.

The facts are not really in dispute. However, the essential facts reveal that on May 13, 1974, appellees leased a parcel of land, which is a business or manufacturing site, to appellants for a term of two years at a monthly rental of $750.00. The lease contained an option to purchase which

was to be exercised within the two year period. The cost of the property was designated at $70,000.00, plus interest at the rate of 8 1/2% from the date of the lease until paid. However, appellants, in the event the option was exercised, would, under the terms of the option, receive credit against the purchase price for the payments under the lease.[1]

Sometime during the month of January, 1975, approximately five months before the lease and option were scheduled to expire, appellee, Archie O'Dell, telephoned appellant, Johnny Allison, and advised appellant that appellee needed money and that if appellant could come up with $50,000.00 within a week, appellee would accept this sum as the full purchase price for the property. Appellant advised appellee that appellant needed time in which to make financial arrangements and advised appellee, "I'll let you know something in a day or two."

The lease and option expired May 13, 1976. However, in July, 1976, appellee, Archie O'Dell, telephoned appellant and advised appellant that appellee had an opportunity to sell the property for $60,000.00 cash, but wanted to offer appellant the first opportunity to purchase the property. Again, appellant stated that he needed a few days to see if he could raise the money.

During the early part of August, 1976, appellees received a letter from appellants' attorney stating that appellants needed additional time to make financial arrangements and requested an extension of the option to August 20, 1976, and requested appellees to sign the extension agreement. Appellees executed the written extension extending the option to August 20, 1976, and returned it to appellants' attorney.

On August 19, 1976, appellants' attorney mailed the

---

[1]Appellant, Johnny Allison, is a resident of Faulkner County, Arkansas, and is President of Castle Industries of Arkansas, Inc., engaged in the manufacturing of mobile homes. Appellees are residents of Arizona, but formerly resided in Faulkner County, Arkansas, and formerly operated O'Dell Frame Shop which manufactured carriages under chassis for mobile homes. This manufacturing business was sold to appellants in 1974, but the premises were leased to appellants which contained an option to purchase.

following letter to appellees which was not received by appellees until August 29, 1976:

"August 19, 1976

Mr. & Mrs. Archie O'Dell
Route 2 Box 7
Duncan, Arizona 85534

RE: Castle Industries of Arkansas

Dear Mr. & Mrs. O'Dell:

We are hereby giving notice to you that Castle Industries of Arkansas and John Allison wish to exercise the option agreed to in the Contract executed on the 13th day of May, 1974 and the Extension Agreement that is attached hereto.

The enclosed payment record indicates that $60,675.01 is the balance due on said contract. Castle Industries and John Allison will continue to make payments of $750.00 per month plus 8 1/2% interest until the entire principal and interest have been paid in full as set forth in the original contract.

If you have any questions feel free to contact me.

With kind regards, I am,

Sincerely,

BRAZIL & ROBERTS"

In relevant part, appellee, Archie O'Dell, testified as follows:

"Q. May I ask you, Mr. O'Dell, if you know when you received that letter dated August 19, 1976?

"A. It was postmarked when I got it. The 29th. In Duncan, Arizona. That was the letter — I think I have

the letter that is postmarked showing when I got the letter. It was about a week later.

. . .

"BY THE COURT: Your testimony is you didn't receive this letter until August 29th?

"A. That's right. I believe that date is right. *This second option had ran out about a week before I got the letter.* (Emphasis added)

Appellant, Johnny Allison, testified on cross-examination as follows:

"Q. Are you saying the option at that time was to purchase for sixty thousand?

"A. The option to purchase was for sixty-one thousand dollars.

"Q. In cash? In cash, one lump payment?

"A. Well, Mr. O'Dell did state that was the way he needed it. He needed the money. And that's the reason he granted us additional time was because he needed the cash.

"Q. Was anything paid to Mr. and Mrs. O'Dell for the extension of this option agreement?

"A. Well we promised to try to work out the details where we could pay them cash. That's the reason they granted it.

"Q. But no actual payment was made in the form of cash?

. . .

"Q. So the option was actually exercised between you

and Mr. O'Dell back in January of 1976? Over the phone?

"A.   Yes, sir."

## HOLDING OF THE TRIAL COURT

"That assuming without deciding that the Plaintiffs had an exercisable option to purchase the property described herein, that the Plaintiffs failed to properly notify the Defendants of their exercise of said option and for that reason said option expired and is of no longer any force and effect."

## THE DECISION

Inasmuch as the record is silent as to the mode or manner in which the acceptance of the option was to be communicated by appellants to appellees, we must determine the intent of the parties in light of the surrounding circumstances governing the creation and discussion between the parties involving the option in question. It is clear from the record that appellee, Archie O'Dell, in early January, 1976, telephoned appellant and offered to sell his property for $50,000.00 cash. Appellant, Johnny Allison, advised appellees that appellants needed a few days to make financial arrangements and advised appellees "I'll be in touch with you in a few days." However, after a period of seven months had elapsed and appellees had not heard from appellant, Johnny Allison, appellee, Archie O'Dell, again telephoned appellant and advised Mr. Allison that appellees had been offered $60,000.00 cash for the property, but appellees wanted to afford appellants the opportunity to purchase the property. We are persuaded that the telephonic calls initiated on the part of appellee, Archie O'Dell, created an implied stipulation or understanding between the parties that appellants' acceptance shall be communicated by telephone. Consequently, the mailing of the written communication on August 19, 1976, containing an acceptance of the option and which was not received by appellees within the prescribed time period, namely, August 20, 1976, was nugatory as an acceptance.

It is well settled that for the exercise of an option to be valid, the exercise must be in accordance with the terms of

the option. *Indiana and Arkansas Lumber Co.* v. *Pharr*, 82 Ark. 573, 102 S.W. 686.

We hold that we cannot say, from the record before us, that the trial court's holding is not supported by a preponderance of the evidence.

Affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.

