Michael REDMAN and Milton REDMAN,
Jr. *v.* STATE of Arkansas

CR 79-33                           580 S.W. 2d 945

Opinion delivered May 21, 1979
(In Banc)

*Robert S. Blatt,* for appellants.

*Steve Clark,* Atty. Gen., by: *Ray Hartenstein,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This appeal comes from a judgment revoking suspension of sentences of appellants imposed upon them in 1974 on charges of burglary and grand larceny and revoking probations granted on a separate charge of burglary. They were sentenced to five years in the Department of Corrections on each of the charges of burglary and grand larceny, but four years of the concurrent sentences were suspended upon condition of their good behavior. On the charge of burglary, they were placed on probation for five years, conditioned upon their good behavior. The petition for revocation was filed by the state on August 31, 1978. It was based upon the allegations that appellants had violated the terms of their probation and of the suspension of their sentences by committing burglary in Sebastian County on August 30, 1978. An amended petition was filed in November, 1978. It added an additional basis for revocation, that is, charges of burglary and theft of property on October 20, 1978, in Crawford County. Both petitions were granted. As a result, appellants were sentenced to terms of 21 years on revocation of their probations. They were sentenced to terms of four years on each count on the original burglary and grand larceny charges. The sentences on the latter charges were to run concurrently, but they were consecutive to the sentences on the revocation of probation. The pleas of appellants on the charges resulting in the original sentences had been nolo contendere. The three points alleged for reversal, as stated by appellants, are:

I

THE TRIAL COURT ERRED IN DENYING DEFENDANT MILTON REDMAN, JR.'S MOTION TO SET ASIDE HIS ORIGINAL PLEAS ON THE GROUND THAT HE DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTER THE PLEAS BECAUSE HE WAS ONLY 13 YEARS OF AGE IN 1974 WHEN THE PLEAS WERE ENTERED.

## II

THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT, MICHAEL REDMAN, VIOLATED HIS PROBATION AND SUSPENDED SENTENCES BY BEING INVOLVED IN AN ALLEGED BURGLARY IN SEBASTIAN COUNTY, LAVACA, ARKANSAS, BECAUSE THE STATE FAILED TO PROVE THE DEFENDANT'S INVOLVEMENT BY A PREPONDERANCE OF THE EVIDENCE.

## III

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE TESTIMONY OF DAVID MATCHETT ABOUT THE OUT-OF-COURT IDENTIFICATION OF A BONE HANDLE HUNTING KNIFE AND A.22 PISTOL CYLINDER PIN FOUND IN THE POSSESSION OF DEFENDANT, MICHAEL REDMAN ALLEGEDLY TAKEN IN A BURGLARY, WITHOUT THE ITEMS BEING OFFERED OR ADMITTED IN EVIDENCE BECAUSE THE EVIDENCE WAS HEARSAY AND VIOLATED THE DEFENDANT'S RIGHT OF CONFRONTATION.

## I

Milton Redman, Jr. was 13 years old when the original sentences were imposed. He was represented by the public defender, who conducted plea negotiations with the prosecuting attorney. As a result of these negotiations, the prosecuting attorney agreed to sentencing Milton to the juvenile training school. This sentence was agreeable to the trial judge, but not to Milton, who wanted to serve his sentence at the place to which his older brother was to be committed. Milton now contends that his pleas on the charges, resulting in the probation and suspension of sentence, were not knowingly, intelligently and voluntarily entered.

This ground for reversal is urged on the basis that withdrawal of the pleas should have been permitted to correct

a manifest injustice. A motion for withdrawal of the pleas of nolo contendere was filed by Milton after the first petition for revocation had been filed. Milton's motion is based solely upon the allegation that he was under the age of 15 years and did not have the capacity, because of his age, to enter the pleas of nolo contendere on the original charges. We should say at the outset that we do not consider Ark. Stat. Ann. § 41-617 (Repl. 1977), barring the conviction of a person for an offense if he was less than 15 years of age at the time of its commission, to be a retroactive declaration of the public policy of this state, at the time of Milton's probation and the suspension of his sentences. This was approximately 18 months prior to the effective date of § 41-617. It is argued on appeal that, even though this statute was not in effect at that time, it should have been. Obviously, the General Assembly did not think so, and we are in no position to give the act retroactivity, when the legislative branch did not do so. The presumptions against retroactivity are too great. See *Snuggs* v. *Board of Trustees of Arkansas State Employees Retirement System,* 241 Ark. 402, 407 S.W. 2d 933; *Chism* v. *Phelps,* 228 Ark. 936, 311 S.W. 2d 297, 77 ALR 2d 329.

It is also urged that since, under the common law, one 13 years old was presumed to be incapable of discerning good from evil, it necessarily follows that such a person is incapable of understanding the consequences of a plea of guilty. We do not agree with this argument. Furthermore, we are convinced that this appellant fully understood the effect of his pleas of nolo contendere. The statutory bar against prosecution of one of tender years for a criminal offense, existing at the time of the pleas, applied to one under 12 years of age. See Ark. Stat. Ann. § 41-112 (Repl. 1964). We have never held that one above the age at which there is a want of criminal capacity was incapable of knowingly, intelligently and voluntarily incriminating himself or that the youth of an accused prevented his waiving constitutional rights. See, e.g., *Jackson* v. *State,* 249 Ark. 653, 460 S.W. 2d 319; *Mosley* v. *State,* 246 Ark. 358, 438 S.W. 2d 311; *Curtis* v. *State,* 255 Ark. 428, 500 S.W. 2d 767. The common law presumption that one under the age of 14 years does not have the capacity to commit a crime is rebuttable and the prosecution can overcome it by clearly establishing the capability of such a youth to appreciate the nature and consequences of his acts and the

mental capacity to know right from wrong in reference to the particular offense charged. The presumption against the capability of distinguishing good and evil is also rebuttable and it prevails only until the contrary is affirmatively shown by the evidence. It is also significant that the strength of the presumption decreases as the age of the youth approaches 14. *Little* v. *State*, 261 Ark. 859, 554 S.W. 2d 312, cert. den. 435 U.S. 957, 98 S. Ct. 1590, 55 L. Ed. 2d 809 (1978). We will be guided by these principles in determining the capacity of one of tender years to enter a plea of guilty or nolo contendere.

It is clear from this record that Milton had sufficient mental capacity to voluntarily, knowingly and intelligently enter his pleas of nolo contendere and that he did so enter them. The record of the proceedings on June 13, 1974, when the pleas of appellants were accepted and they they were sentenced consists of 22 pages. The proceedings were conducted with the meticulous care characteristic of the judge who accepted the pleas. At the outset, Judge Wolfe addressed appellants and the adults accompanying them. This record discloses the following:

THE COURT: It is important that both of you young men stop and feel free to say, "Judge, what does that mean?" or "What does this say?"

I want to say again to you please don't hesitate to stop me and say, "Now, Judge, let me get this straight." I haven't asked your father or your grandmother. In your judgment do you feel that your sons and grandsons understand these papers?

MR. REDMAN: I believe they do.

MRS. REDMAN: I believe they do.

At the time the pleas were entered, appellants appeared with the public defender, their father and their grandmother. Milton said that his parents had plenty of time to talk to the public defender. He said that he understood that his attorney had told the court that he desired to enter a plea, that plea negotiations had been carried on between the public defender and the prosecuting attorney and that the prosecuting at-

torney's recommendation was not binding on the court. He was able to state and understand the terms of the sentences that his attorney had advised him would be imposed, if the court found the prosecuting attorney's recommendation to be reasonable. He said that he fully understood what would happen to him if he pleaded nolo contendere. He admitted that he had signed a comprehensive "Plea Statement — Nolo Contendere," that he understood that by signing that paper he was telling the court that he understood everything on it and that there were no words on that paper that he didn't understand. He said that he had gone over a paper entitled "Statement of the Court Respecting Statutory Probation" with his attorney, that he understood it and was willing to accept its terms. He also said that he understood the content, and was willing to accept the conditions of a paper entitled "Statement of the Court Respecting a Suspended Sentence." He said that he had no questions about any of those papers and that he had been afforded plenty of time to go over the written "nolo contendere statement." He stated that he understood that the court was accepting the plea and said he had nothing to say before the sentences were pronounced and that he had no other questions about the proceeding. Milton's signatures on the statements mentioned were witnessed by the public defender.

Milton was 14 years of age on November 20, 1974. He was in the eighth grade at school, and was attending school when his pleas were accepted. He had passed the seventh grade and had never been required to repeat a grade. He testified at the revocation hearing about his previous pleas. He recalled having talked with the public defender, his father and his grandparents about the plea. He remembered the questions asked him by the sentencing judge. He acknowledged that he had known what the charges were. In his testimony, the only basis he gave for his pleas being involuntary was that, in retrospect, he knew that he had made an illogical decision in demanding that he be sentenced to the Department of Corrections, rather than the "reform school," against the advice of his attorney, his father and his grandparents, so he could be with his older brother, with whom he was very close. He said that he was asking that the pleas be set aside because they were not "intelligently" entered and because of "the present status of the law in the State of

Arkansas." He said that he had been given only two days to think about the matter after the public defender had told him of the results of the plea negotiations. He did not testify that he had not known what the consequences of his pleas would be or that they were not entered voluntarily.

Don Langston, Sebastian County Public Defender since December, 1971, also testified. He said that he had twice talked with appellants and their family about the plea arrangements. He said that the evidence against appellants had been overwhelming and that he had advised them that going to trial was against their best interests. He did advise both to plead guilty, but did not advise Milton to enter the plea on the sentencing conditions imposed, only because he very strongly advised Milton to accept the negotiated sentence to the Juvenile Training School, where the period of detention would not have been definitely fixed. Langston had explained the parole law to Milton. Langston said that Milton was adamant about the matter and that he had felt that Milton would not enter a plea unless he could "go with his brother." Langston had felt that, even though neither of the appellants was very bright, both were capable of under-standing the proceedings and had actually understood their rights and were aware of the sentences they would receive. He stated that Milton voluntarily entered his plea, against Langston's advice. Langston stated that he had fully in-formed Judge Wolfe about the differences between him and Milton about the sentences and that Judge Wolfe would have been willing to commit Milton to the training school. We are well aware of the fact that this experienced public defender has always been vigorous in the assertion and protection of the rights of the clients he represents.

It is significant that no parent or grandparent of Milton testified at the revocation hearing. Appellant never question-ed the lack of wisdom of his plea until after the petition for revocation was filed and, even at the hearing, he questioned only his own judgment in refusing the commitment to the training school, and not the wisdom of his admission of guilt. We cannot say that the trial court erred in denying the mo-tion for withdrawal of the nolo contendere pleas.

## II

Michael Redman contends that, not only is the finding that he participated in a burglary in Sebastian County clearly against the preponderance of the evidence, there is no evidence to connect him with that offense. The gist of his argument is that there was no one who could identify him as one of the two people who burglarized the Jones residence, ten miles northeast of Lavaca. It is true that it is only on the basis of circumstantial evidence that one could say that Michael participated in that burglary. He argues, however, that the circumstances can, at best, only arouse a suspicion that he was a participant. We do not agree.

Mrs. Guy Jones testified that two persons came to her residence on August 30, 1978, in a red pickup truck, on the back of which was a white "camper." The truck bore the license No. FKF-116. She identified Milton as one of the two persons. She said that, soon after this vehicle arrived at her house, and someone had knocked at the front door and shaken it, Milton peeked in a picture window and left in the pickup truck. He soon returned and entered a patio door by springing a lock on the storm door. She had seen the truck being driven back to her residence after she had heard someone open the screen door from her patio. She had also heard two persons talking just before Milton entered.

When Milton saw her, he left the house and departed in the pickup truck. She reported to the sheriff's office about 20 minutes later. Her report was delayed while she called her father-in-law and cousin for advice. Two deputy sheriffs were at Rogers Avenue and Massard Road in Ft. Smith, heading toward Lavaca, when they spotted the vehicle Mrs. Jones had described. They stopped the vehicle. It was occupied by appellants. The arrest was made about 25 minutes after Mrs. Jones called the sheriff's office. Although Mrs. Jones could identify Milton, she was unable to identify Michael as the second person who had been at her residence.

The license plate on the vehicle was registered in Milton's name. The same vehicle was seen at the scene of the Crawford County burglary. A deputy sheriff found Michael's wallet, containing his driver's license and other identification,

in the pickup truck after the homeowner in Crawford County had taken the keys from the vehicle, which had been left parked at his house, after a burglar he had caught in the house had taken flight. Someone had been backing the truck toward the door just before the homeowner saw the burglary in the house. Within an hour, Ricky Selph and Michael were arrested by Deputy Sheriff Grill, who had seen two persons in the vehicle on Highway 50, just north of this residence on Highway 59, 45 minutes prior to the burglary. At the time of the arrest, Michael and Selph were in a wooded area on a county road, east of and parallel to Highway 59. Both of them appeared to have been running. Selph fit the description of the person the homeowner saw in his house and later saw running from the scene. The place of arrest was about one mile from the scene.

This circumstantial evidence afforded a very substantial basis for the trial court's finding that Michael had been with Milton and was in the pickup truck when Milton entered the Jones residence.

Under present law, there is no distinction between the criminal responsibility of an accomplice and the person who actually commits the offense. Ark. Stat. Ann. § 41-302, -303 (Repl. 1977); *Parker* v. *State,* 265 Ark. 315, 578 S.W. 2d 206. Presence of an accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation are relevant facts in determining the connection of an accomplice with the crime. *Jackson* v. *State,* 256 Ark. 406, 507 S.W. 2d 705. The evidence here is greatly dissimilar to that in *Vaughn* v. *State,* 252 Ark. 505, 479 S.W. 2d 873, and other cases cited by appellant, where the only evidence to connect an accused with a crime is his association with a participant at a time and place remote from the offense. The additional circumstances here afford a basis for finding that Michael was at the scene of the Jones burglary.

## III

David Matchett was the owner of the home burglarized in Crawford County. After the burglar took flight from the house, Matchett found some of his guns stacked by a door.

The guns had been kept in a gun cabinet in another room. Upon searching the house, he found a .38 caliber pistol and a .22 caliber pistol missing. About two hours after the officers came to his house in response to his call, Matchett was called to come to the Crawford County Sheriff's Office to view some items.

Grill had testified that he observed a bone-handled hunting knife in Michael's rear pocket when he arrested Michael and Selph. Grill had taken the knife and put it in the property room of the sheriff's office. On the way to the sheriff's office after the arrest, Grill had heard a shuffling noise in the rear of his patrol car, where he had placed the two persons he had arrested. He said that he then looked back and observed Michael take an object from his right front pocket and deposit it on the floor. Grill stated that, upon arrival at the jail, he had immediately opened the rear door near which Michael had been sitting and picked up this object, which he described as a cylinder pin from some kind of pistol.

Among the items Matchett saw were a hunting knife and a cylinder pin from a gun. When Matchett was asked at the hearing to describe the hunting knife he was shown, appellant's attorney objected, unless the hunting knife and pin were brought in, so appellants could see them and the witness could be cross-examined as to marks that might afford a basis of identification. The deputy prosecuting attorney reminded the court that Grill had stated that he had shown the knife and pin to Matchett. Appellant's attorney then objected on the basis that it was improper for the witness to identify items that were not before the court and that appellants would be deprived of the right of cross-examination and that he had never seen such a procedure in a trial. When appellants' attorney stated that he saw no problem in the production of the items, the deputy prosecuting attorney responded that they were being held as evidence in Crawford County. Appellants' attorney then objected that no chain of custody had been established and that the state could not establish a burglary without introducing items taken in the resulting theft. After the trial judge overruled the objection, Matchett testified that when he went to the sheriff's office, he was shown a bone-handled knife about six inches long that had "brown molded into it" and

that it was his knife, but that he had not reported his knife as missing when he reported the incident to the officers who came to his residence. He also testified that he was shown a black metal pin, about three inches long, grooved around the top end "where it slips into a .22 gun." He said that he identified it as his pin and that it regularly fell out when the gun was carried but that he did not know why. Matchett admitted, on cross-examination, that there were no identifying marks or features on either the knife or pin. He said that the pin was like any other pin that came from the particular make and model weapon that he owned, and that the knife he saw was like the knife that he owned. He said that the knife looked like his knife. He said that the .22 caliber gun was at the police department in Van Buren.

The multi-faceted objection of appellants to the testimony of Matchett is somewhat baffling. We might well dispose of this point under the rule adopted in *Dixon* v. *State*, 260 Ark. 857, 545 S.W. 2d 606, because appellants have certainly cited no authority which would support their unconvincing argument. An accused certainly has no right to be confronted with physical evidence under Art. 2, § 10 of the Constitution of Arkansas, or Amendment 6 to the Constitution of the United States. Those constitutional provisions are directed only to an accused's right to be confronted by the witnesses against him.

The hearsay rule has no application to physical objects. It applies to out-of-court statements only. Ark. Stat. Ann. § 28-1001, Rule 801 (c) (Supp. 1977).[1] It would have applied had the state relied upon testimony of Grill that Matchett had identified the items. *Wilkens* v. *State*, 261 Ark. 243, 547 S.W. 2d 116.

The best evidence rule applies only to writings, photographs and recordings. Ark. Stat. Ann. § 28-1001, Rule 1002 (Supp. 1977). It certainly had no application here. The fact that exhibition of such objects would more clearly and

---

[2]The Uniform Rules of Evidence, except for those with respect to privileges, do not apply in sentencing or probation revocation proceedings. Ark. Stat. Ann. § 28-1001, Rule 1101 (b) (3). Still, a defendant in such proceedings is not entitled to have rules of evidence stricter than those set out in the Uniform Rules applied in such proceedings.

forcefully explain their nature, appearance or condition is not a valid objection to oral evidence concerning them. *Washington* v. *State*, 254 Ark. 121, 491 S.W. 2d 594; *Meyer* v. *State*, 218 Ark. 440, 236 S.W. 2d 996. If any chain of custody was required, it was established by the testimony of Grill.

We find no error in the admission of the testimony pertaining to the knife and connecting pin. Whatever discretion the trial court had in the matter was not abused.

The judgments are affirmed.

PURTLE, J., dissents.