Otha Lee CONLEY *v.* STATE of Arkansas

CA CR 79-45                                      590 S.W. 2d 66

Opinion delivered November 7, 1979
Petition for Review denied December 3, 1979
Released for publication December 5, 1979

714

*Robert A. Newcomb*, for appellant and cross-appellee.

*Steve Clark*, Atty. Gen., by: *Catherine Anderson*, Asst. Atty. Gen., and *John Wesley Hall, Jr.*, for appellee and cross-appellant.

JAMES H. PILKINTON, Judge. Appellant was charged with burglary and rape in violation of Ark. Stat. Ann. § 41-2002 and 41-1803 respectively. He was found guilty by a jury on both charges. Punishment was fixed at three years imprisonment for burglary and twenty years for rape. The sentences were directed to be consecutive. Appellant brings this appeal from the judgment and sentence imposed by the Pulaski County Circuit Court.

## I.

Appellant made a statement to police after his arrest. A pretrial hearing was held and the trial court granted appellant's motion to suppress the statement on the grounds that (1) the state failed to have present at the hearing all of the witnesses who were present at the time the statement was made, and (2) that the appellant had requested his attorney be present at the time of the statement, and his attorney was not there. In accordance with the trial court's ruling, the prosecution was not permitted to introduce the statement as a part of its evidence in chief. Later during the trial when the defendant took the stand to testify in his own defense, and denied making the statement to police, another in-chambers hearing was conducted. The trial court then held that the state would be allowed to introduce evidence of the statement in question for the limited purpose of impeaching the credibility of the appellant. This was done, and appellant made no objection. However, appellant now urges that the trial court erred in failing to give a specific jury instruction as to the limited purpose for which the statement could be considered.

The record reflects that discussions concerning the nature and content of the jury instructions occurred at several intervals during the trial. The first such discussion took place after the state had rested, and before the defense had begun to put on its case. At that time, all of the instructions which had been submitted by both sides were reviewed, and the trial court told the attorneys which ones would be given. The only instruction with regard to credibility of witnesses which had been submitted at that time was adopted by the judge as Court's Instruction No. 5, which was the usual one on credibility of the witnesses, and of the weight that should be given to their testimony. Both sides approved this instruction. Later at the in-chambers hearing held during the presentation of the defense's case when the judge decided to allow the state to use the appellant's prior statement for the purpose of attacking his credibility, the following discussion occurred:

> MR. ACHOR: That's right. He says he didn't tell the policeman that. He says he told the policeman the same thing he told here. Now, you have already ruled that it's inadmissible as an involuntary statement.

> THE COURT: As to the merits of the statement but not as to his credibility.

> MR. ACHOR: I think with this we will need another instruction. We might as well get it straight right now.— that this was not for the purpose of proving the truth of this statement.

That is all that was said by counsel for appellant concerning the limited instruction. Nor was there ever any further attempt by appellant, either at the time the state offered the evidence in question, or at the time when the instructions were ready to the jury, to have a limiting instruction given. At the close of the case for the defense, and after both sides had rested, the record reveals the following:

> THE COURT: (in chambers) Are you ready to charge this jury and read instructions to them?

MR. HALL: Yes, your Honor.

THE COURT: Anything else, gentlemen?

MR. ACHOR: No, sir.

Immediately later in the courtroom, the following occurred:

THE COURT: Both sides rest?

MR. HALL: (for state) Yes, sir.

MR. PATTERSON: (for defense) Yes, your Honor.

THE COURT: Are you ready for me to instruct the jury?

MR. PATTERSON: Yes, your Honor:

MR. HALL: Yes, sir.

Appellant contends that the statement of defense counsel, quoted above, to the effect that I think we will need another instruction, etc., constituted an adequate offer of a limiting instruction. We do not agree. Rule XIII of the Uniform Rules for Circuit and Chancery Courts (251 Ark. 1117) provides:

> No party may assign as error the giving or the failure to give an instruction to a jury unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection.

Suffice to say that appellant made no objection to the instructions as given by the court, nor did he offer a proper limiting instruction. The purpose of requiring objections is to give the trial court an opportunity to correct any error or omission on its part. *Griffin* v. *State*, 248 Ark. 1223 at 1232, 455 S.W. 2d 882 (1970). Clearly no limiting instruction was ever submitted to the trial court by appellant; thus, under the circumstances here, there was no error in the trial court's

failure to give such an instruction. *Perry* v. *State,* 255 Ark. 378, at 384, 500 S.W. 2d 387.

## II.

It is next contended the trial court should have granted appellant's motion for a mistrial when the prosecuting attorney allegedly allowed the "rap sheet" on the defendant to be seen by the jury. The record reveals that the prosecutor asked the defendant whether the one robbery conviction he had testified to was his only felony conviction and whether he had been to prison only one time. At that point, according to the record, the state's attorney approached the defense table, apparently to hand appellant's counsel a sheet of paper that was only later identified (after the jury had been removed), as a "rap sheet."

If any particular attention was called to this piece of paper, it was the result of the action of defense counsel. As the prosecutor approached the defense table to hand the public defender a copy of the sheet, the following occurred:

MR. ACHOR: (Counsel for appellant) I don't want to see that. I see that certified copy you got there. I see you got something there with a seal on it.

THE COURT: Gentlemen, if you are going to discuss something —

MR. ACHOR: Judge, may we approach the bench?

At this point counsel for both sides approached the bench, and conferred with the court out of the hearing of the jury, as follows:

MR. ACHOR: I would like to move for a mistrial, him flashing that before the jury.

The court had the jury taken out of the courtroom, and the matter was further discussed. The court then made the following statement:

All right, gentlemen, the record is complete at this time. The court finds that the defense raised the question of his prior conviction. The court further finds that Mr. Bentley asked him and he admitted the robbery, as he did on direct. He asked him if that was all, if there were any others, and he said, "No." So far as the jury knows, that is all. There was some discussion, probably inaudible, from the defense counsel and from the prosecutor which was initiated by both counsel, and defense was as culpable in it as the prosecutor.

I do not think that this jury has heard or seen anything that can be detrimental to this man's right to have a fair trial. I will overrule the motion for a mistrial.

There was a question of fact presented as to whether or not the sheet was seen by the jury, or the comments of counsel overheard. The trial judge resolved the issue against appellant. *Parrott* v. *Arkansas*, 497 F. 2d 1123 (8th Cir. 1974). The facts here are entirely different from those in *Shaddox* v. *State*, 243 Ark. 55, 418 S.W. 2d 780 (1967), and the other cases which appellant cites as authority for his contention that a mistrial should have been granted. We find no merit in appellant's point II.

### III.

Appellant also claims that the trial court commented on the evidence, and his motion for a mistrial should have been granted. During the redirect examination of the prosecutrix, the following exchange occurred:

BY MR. HALL, DEPUTY PROSECUTING AT-TORNEY: How certain are you that the man sitting at the counsel table is the man who was with you that night?

MR. ACHOR: Your Honor, this is not proper in the context of the trial. This would have been proper on direct but not now.

MR. HALL: This is redirect.

THE COURT: Sustained.

MR. HALL: Your Honor, I would like to point out that they brought up the question of identification.

THE COURT: Mr. Hall, I'm not sustaining it for the reason Mr. Achor says. I'm sustaining it because the lady has identified the man sitting at the counsel table as the assailant.

Out of the hearing of the jury the public defender moved for a mistrial which was denied.

THE COURT: I just said what the witness has testified to, Mr. Achor. Overruled.

The remark of the trial court here was merely a restatement of the witness's testimony. Consequently, it did not constitute a comment on the evidence in violation of Article 7, Section 23 of the Arkansas Constitution, as appellant claims. See *Lisko* v. *Uhren*, 130 Ark. 111, 196 S.W. 816.

## IV.

The issue raised by appellant in his final point for reversal concerns an incident which occurred at the beginning of the voir dire of the jury. After the jury panel was sworn, the court introduced the attorneys and the defendant to the prospective jurors. Then the judge had the witnesses to be identified by name, and asked the panel if any juror knew any of these witnesses. Two other rape victims were included by the state as possible witnesses. As it later developed, the court did not permit the state to use these two witnesses, and that matter is the subject of the cross appeal in this case. Appellant contends the introduction to the jury panel of the other two alleged rape victims, as possible witnesses, was error and that the court should have granted his motion to strike the whole jury panel.

The record does not indicate that the prospective jurors were ever informed as to what relationship the two had to the

case. They were introduced by name only, and then put under the rule. No prejudice to the defendant could have resulted from this incident, particularly when no final ruling had been made by the court on the eventual admissibility of their testimony. If appellant was prejudiced by what happened here, then conceivably every prosecutor would risk reversal when he attempts during voir dire to determine whether any member of the panel is acquainted with any of the potential witnesses before knowing whether their testimony will be necessary or admissible.

Appellant cites *Sharron* v. *State*, 262 Ark. 320, 556 S.W. 2d 438 (1977) as support for his argument that reversal on this point is required. The facts in *Sharron* were entirely different, and that case is clearly distinguishable from the one before us. Appellant's argument on this point lacks validity.

## THE CROSS APPEAL

At the conclusion of the trial, the state sought to put the other alleged victims on in rebuttal to the defendant's claim of consent by the victim in the case being tried. The state made a proffer and the court excluded it as too prejudicial. This cross appeal is from the trial court's rejection of the proof of other crimes under U.R. Evid. 404(b). Since this case is being affirmed on direct appeal, little need be said about the cross appeal. The Arkansas Supreme Court has already ruled that evidence of other crimes is admissible for limited purposes. A decision on the cross appeal in this case is not necessary to the uniform administration of criminal law. It is clear that the admissibility of relevant evidence under Rule 404(b) of the Uniform Rules of Evidence may be decided on a case by case basis. *Rogers* v. *State*, 257 Ark. 144, 515 S.W. 2d 79 (1974) and *Rios* v. *State*, 262 Ark. 407, 557 S.W. 2d 198 (1977).

Finding no error, this case is affirmed on direct and cross appeal.

Penix, J., concurs.

MARIAN F. PENIX, Judge, concurring. I concur with the majority in affirming the defendant's conviction, but I would grant the cross-appeal.

Rape is a crime unlike all others in that proof of consent is an absolute defense. Even where two consenting adults enter into a double suicide pact and they both willingly die, society rejects the consent and we call it a "murder-suicide".

Before our legislature wisely eliminated an attack on the character of the female victim as evidence, many rape trials consisted primarily of an effort to picture the female as a person whose wanton sexual activities of the past made her fair game for the male defendant, and, whatever ensued was of minor significance.

Except for attacks upon young male inmates of penitentiaries, rape almost exclusively is a problem of the female. Its victims may be eight years of age, or eighty, attractive or homely, brash or shy, and of.all races, creeds and strata of society. Sadly, the occurrence of this crime continues to increase in Little Rock, in Arkansas, and over the nation.

The writer of this opinion dares not work in her office when the Justice Building is empty because she's unwilling to subject herself to the danger of rape. No male opinion writer is ever faced with this sinister problem.

In this case the female victim testified she was awakened by the defendant standing over her bed and threatening her with a knife if she didn't submit to his sexual assault upon her. Defendant testified the female had been lonely and invited him to her home and consented to the sexual relationship.

Here, a male defendant says the prosecuting witness, who alleges she was raped, actually consented.

The fact to be established, non-consent, is crucial in a rape case . . . Often the more serious problem is proving non-consent . . . Absent a physical struggle resulting in

bruises or lacerations, such resistance is often difficult to prove . . . Certainly, the fact that an individual commits a rape at one time has no bearing on whether another consented to intercourse at a later time. Here, however, the People did not offer the prior acts to prove prior rapes, or that the defendant is a bad man with criminal propensities. The People offered the prior acts to shown the scheme, plan or system employed by the defendant in raping the complainant . . . *People* v. *Oliphant*, 250 N.W. 2d 443 at 450 (Mich. 1976).

See also *Fisher* v. *State*, 57 Ala. App. 310, 328 So. 2d 311 (1976); *State* v. *Valdez*, 23 Ariz. App. 518, 534 P. 2d 449 (1975); *Pendleton* v. *State*, 348 So. 2d 1206 (Fla. 1977); *Dean* v. *State*, 277 So. 2d 13 (Fla. 1973). In this case three other females were willing to undergo embarrassment and humiliation and describe the details of sexual assaults upon them by this same defendant in the same eight-week period in the same neighborhood and in much the same manner. This indeed was relevant to the defendant's intent in the trial at hand. Such evidence should have been allowed after an adequate precautionary instruction limiting consideration of the evidence to show the defendant's motive, intent, knowledge, or absence of mistake. Ark. Stat. Ann. § 28-1001 (Supp. 1977) Rule 404(b). McCormick, Evidence § 190, at 448-51 (2d ed. 1972); *State* v. *Thomas*, 110 Ariz. 106, 515 P. 2d 851 (1973); *Carroll* v. *State*, 212 Tenn. 464, 370 S.W. 2d 523 (1963); *Turnbow* v. *State*, 451 P. 2d 387 (Okla. Crim. 1969); *Humphrey* v. *State*, 54 Ala. App. 62, 304 So. 2d 617 (1974); *People* v. *Therriault*, 42 Ill. App. 3d 876, 356 N.E. 2d 999 (1976). See Louisell & Mueller, Federal Evidence § 140 (1978); Annot., *Admissibility, in prosecution for sexual offense, of evidence of other similar offenses*, 77 A.L.R. 2d 841 (1961).

When Patty Hearst said she participated in a bank robbery only because she was under duress the court allowed evidence of her willing participation in a later robbery to rebut this female accused's claim of duress in the earlier robbery. *U.S.* v. *Hearst*, 563 Fed. 2d 1331 (1977)

Appellant raised the defense of duress at trial and offered substantial evidence to support it. To convict

appellant, therefore the government was required to show appellant was not acting under duress when she participated in the San Francisco robbery. The evidence of appellant's involvement in the Los Angeles activity was relevant to this issue because it tended to show appellant willingly engaged in other criminal activity with persons of the same group at a time not unduly remote. p. 1336.

It may well be that the ultimate precedent on this point should come from our Supreme Court under its Rule 29.

I would grant the cross-appeal and admit the excluded evidence of nearly identical assaults on other females which are close in time and location to the case being tried.