Johnny Ray SMITH *v.* STATE of Arkansas

CR 91-233                                              837 S.W.2d 279

Supreme Court of Arkansas
Opinion delivered July 13, 1992

248

*Potter and Veon*, by: *Thomas A. Potter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Johnny Ray Smith, appeals a judgment of the Miller Circuit Court convicting him of the first degree murder of Robert Lollis and sentencing him to life imprisonment in the Arkansas Department of Correction. He assigns four points of error in his jury trial. We find no merit to his arguments and affirm the judgment of conviction.

The last of the four arguments raised in appellant's brief is that the trial court erred in denying his motion for directed verdict based on insufficient evidence. We treat a challenge to the denial of a motion for directed verdict as a challenge to the sufficiency of the evidence. Based on the holding in *Burks* v. *United States*, 437 U.S. 1 (1978), that the double jeopardy clause precludes a second trial when a conviction in a prior trial was reversed solely for lack of evidence, we have determined that preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of any asserted trial errors. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992); *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). Therefore, we consider appellant's last argument, his challenge to the sufficiency of the evidence, prior to considering his other arguments concerning trial errors.

The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict; substantial evidence must be forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. On appellate review, we need only ascertain that evidence which is most favorable to appellee and, if there is substantial evidence to

support the verdict, we affirm. *Lukach*, 310 Ark. 119, 835 S.W.2d 852; *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991).

We recite the evidence presented at trial in the foregoing light. Matthew Nard, a paid informant for the Miller County Sheriff's Office, testified that approximately a week and a half before the murder occurred, he had seen appellant with a .45 automatic similar to the one used in the murder of Lollis.

Pearline White, an acquaintance of appellant's, testified that on April 27, 1990, appellant, who is also known as "Boo," John Paries, who is also known as "Little John," and the victim, Robert Lollis, gave her and her sister a ride to a nightclub. She stated that Paries was driving the car, that appellant was on the passenger side, and that Lollis was in the back seat.

On April 28, 1990, at approximately 1:00 a.m., Officer Charles Wise, of the Miller County Sheriff's Department, was dispatched to Highway 296 south of Highway 67 in Miller County. Officer Wise found Lollis lying on the left side of the road and concluded there had been a traffic accident. Officer Wise called an ambulance and then began asking Lollis who had done this to him. Lollis finally answered, "Little John done it."

Officer Willie Huff, of the Texarkana Police Department, testified that the vehicle involved in the murder belonged to Clifford Gill, appellant's uncle. Officer Huff located the vehicle at Gill's apartment at about 5:30 a.m. on April 28, 1990. Officer Huff shined his flashlight in the window of the car and saw blood stains on the back panel and inside window. Officer Huff also saw a .45 shell casing in the car. Gill told Officer Huff that John Paries had disposed of the weapon near the Dunbar School in Texarkana, Texas. Officer Huff and Officer Blondell recovered a .45 semi-automatic pistol wrapped in a blue bandanna inside a trash dumpster at the Dunbar School.

The physical evidence presented at trial revealed that Lollis was shot with a .45 semi-automatic pistol and run over by a vehicle. The medical examiner testified that Lollis suffered three types of injuries. Lollis had been beaten on the back of the head with the butt of a pistol; he also suffered at least six gunshot wounds to his body and had a broken right thigh bone. In addition to these three main injuries, Lollis had scrape wounds, abrasions,

and bruises on his body and his teeth had been loosened and knocked down. All of these wounds were said to be consistent with being hit by a moving vehicle.

The medical examiner testified the cause of death was a combination of these wounds but that, in his opinion, the most damaging wound was the gunshot wound to the right side of Lollis' body which passed through the diaphragm and liver before exiting Lollis' body on the left side. The medical examiner also testified that some of the bullets came from the right side, some came from the back, and some came from the front.

Berwin Monroe, a firearms, tool marks, and explosives analyst for the State Crime Laboratory, positively identified the expended shell casings found at the scene of the crime as being fired from the .45 semi-automatic which was recovered in the trash dumpster at the Dunbar School.

Bill Sillivan, crime scene investigator for the Texarkana, Arkansas Department of Public Safety, performed a blood stain investigation of the suspect vehicle. Sillivan determined there was blood present in almost all areas of the interior of the car as well as the exterior. He testified there was blood on the undercarriage between the right front wheel and the right rear wheel. He also testified there was a tremendous amount of blood that had been wiped up in the back seat. Sillivan also found two bullets and three bullet holes in the left rear seat. He testified that the bullets that made the holes in the seat all came from the right front side of the vehicle.

Margaret Grissom, a former girlfriend of appellant's, testified that she saw appellant on the night of the murder. She also stated that when she visited appellant in jail, he told her he was at the crime scene when Lollis was murdered.

John Paries, III, also knows as "Little John," pleaded guilty to Lollis' murder. He testified at appellant's trial that he was originally from Los Angeles, California, and a member of the 74 Hoover Crip Gang. Paries stated there were other gangs in California and that the various gangs had shootings and killings. Evidence of his membership in the 74 Hoover Crip Gang is tatooed on his right forearm and was shown to the jury. Paries stated that he and a friend, who is also a Crip, came to Texarkana

to sell drugs and that he had the occasion to meet both appellant and the victim. He testified that neither appellant nor the victim were members of a gang, but that appellant sometimes held himself out to be a member of the gang in which Paries was a member. Paries testified that Frank Utsey offered him $1,000.00 to set Lollis up with some cocaine. When asked to explain this statement, Paries stated that the set up would be to discourage Lollis from testifying against Utsey in a trial in another city. Paries stated he did not accept the offer and told Lollis to "watch his back." Paries also testified that a few weeks prior to Lollis' murder, Paries witnessed a conversation between appellant and Utsey during which money was exchanged. On cross-examination, Paries testified that he knew Lollis' shooting was supposed to happen but that he was not involved in the hit on Lollis and did not get any money for it. He explained his participation in the murder as a result of being high on beer and marijuana.

Paries explained the murder as follows. Paries was driving appellant's uncle's car, appellant was in the front passenger seat, and Lollis was directly behind Paries. They were driving, smoking weed, and drinking beer. When they were out on a rural highway looking for a particular nightclub, appellant began shooting Lollis while all three were still in the car. Paries stopped the car, Lollis and appellant jumped out and appellant began chasing Lollis. Paries then remembers beating Lollis over the head with the pistol, which did not have any shells in the receiver at that time. Paries testified he fled to California to escape the police.

Jerry Lee Hamilton, a cellmate of appellant's at the Bi-State Justice Building and a friend of the victim, testified that he and appellant had discussed Lollis' murder. Hamilton related their conversation as follows. Appellant was on the passenger side of the vehicle when he turned around and shot Lollis two or three times. Appellant said he could not shoot any more and jumped out of the car. Appellant then watched Paries and Lollis wrestle. Hamilton stated that he had no doubt appellant told him he was in the passenger seat and fired the first shots. Hamilton also related that appellant was going to change his story to reflect that appellant was driving the car and knew nothing about the murder at all.

In addition to making three statements to law enforcement

officials which were admitted into evidence, appellant testified at trial. He testified that he was driving the car when they picked up Pearline White and her sister and that he was still driving when the murder occurred in a rural area. He testified that the murder occurred as follows. As the car approached a curve, Paries turned around and began shooting. It scared appellant and he jumped out of the car while it was still moving. Paries put the car in park, chased Lollis, and continued shooting him as Lollis exited the car. Paries then beat Lollis with the handle of the gun and returned to the car. Appellant tried to run away but Paries chased him and told him to get in the car. Paries threatened appellant by stating that either he or his "home boys" would kill appellant if appellant said anything about the murder. Appellant then drove the two of them back to town.

With respect to the issue of drug and gang activity, appellant stated that Paries was a member of the 74 Hoover Crip Gang and that Paries sold drugs. Appellant also stated that Paries gave him a hat with "74HCG" on it and that although he was not a member of the Crips, he wore the hat.

Appellant's challenge to the sufficiency of the evidence has two prongs. First, he argues that the evidence presented was insufficient to sustain a conviction because it did not meet the requirement set forth in Ark. Code Ann. § 16-89-111(d) (1987) that a confession of a defendant, unless made in open court, be accompanied by other proof that the offense was committed. Second, appellant argues the evidence is insufficient because it fails to meet the requirements of section 16-89-111(e) that a felony conviction based on the testimony of an accomplice be corroborated by other evidence connecting the defendant with the commission of the offense.

We have stated that the evidence required to corroborate an appellant's confession is evidence that the offense was committed. *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986). The state presented the foregoing testimonies of law enforcement officials, lay witnesses, and medical experts, establishing that Lollis died from gunshot wounds, a beating, and being run over by a moving vehicle. The foregoing evidence is sufficient to establish the Lollis' murder was committed. Moreover, even though the foregoing evidence is circumstantial, it is substantial

evidence and supports the jury's verdict of guilt. *Crawford* v. *State*, 309 Ark. 54, 827 S.W.2d 134 (1992).

The evidence required to corroborate the accomplice testimony of Paries must be sufficient standing alone to establish the commission of the offense and to connect appellant with it. *David* v. *State*, 295 Ark. 131, 140, 748 S.W.2d 117, 122 (1988). We have just established that the state proved the commission of the offense. The presence of an accused in the proximity of a crime, opportunity, and an association with a person involved in a crime in a manner suggestive of joint participation are relevant factors in determining the connection of an accomplice with a crime. *Redman* v. *State*, 265 Ark. 774, 580 S.W.2d 945 (1979). As for the connection of appellant to the murder in question, the state offered the testimonies of Pearline White and Margaret Grissom who had seen appellant with Paries and Lollis hours before the murder. In addition, Grissom stated that appellant told her he was present when the murder occurred. Moreover, the state offered the testimony of Jerry Hamilton who stated there was no doubt in his mind that appellant told him appellant was in the passenger seat and fired the first shots into Lollis. All of the physical evidence presented by the state is consistent with Paries' and Hamilton's testimonies.

There is no distinction between the criminal responsibility of a principal and an accomplice. *Wilson* v. *State*, 301 Ark. 342, 783 S.W.2d 852 (1990). The jury was instructed on accomplice liability. The sufficiency of the corroborating evidence will frequently be a question of fact for the jury rather than a question of law for the court. *See McClure* v. *State*, 214 Ark. 159, 215 S.W.2d 524 (1948). Thus, on appeal, our inquiry is whether there is substantial evidence to support the jury's finding that the corroborating evidence was sufficient; in making this determination, we need only consider testimony lending support to the verdict. *Hill* v. *State*, 285 Ark. 77, 685 S.W.2d 495 (1985).

It is not clear whether the jury convicted appellant as a principal or as an accomplice. However, it is irrelevant as the criminal responsibility is the same and as there is substantial evidence to support both a determination that Paries' testimony was sufficiently corroborated and that appellant was guilty as a principal. In light of this overwhelming substantial evidence, the

trial court did not err in denying appellant's request for a directed verdict of acquittal.

As his next assignment of error, appellant claims the trial court erred in allowing the state to amend the information the day before trial. On June 11, 1990, the state filed an information charging appellant with murder in the first degree. The information alleged that appellant, with the premeditated and deliberated purpose of causing the death of Lollis, caused the death of Lollis. On April 22, 1991, the date appellant's trial was scheduled to begin, the state amended the information. The amended information still charged appellant with first degree murder, however it eliminated the requirement of premeditation and deliberation. The amended information alleged that appellant, with the purpose of causing Lollis' death, caused Lollis' death. Appellant objected to the amendment and argued, as he argues on appeal, that the amendment reduced the state's burden of proof and that to proceed under the amended information would be improper and unfair.

Appellant's argument is without merit. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 1991), the homicide statute in effect at the time of Lollis' murder, states that a person commits first degree murder if he purposefully causes the death of another. Thus, the *mens rea* for first degree murder at the time of Lollis' murder was no longer premeditation and deliberation, and the state was never required to prove that appellant acted with such a mental state. Appellant does not dispute that section 5-10-102(a)(2) was in effect at the time of the murder.

We have held that the state may amend an information after the jury has been sworn but before the case has been submitted to it, so long as the amendment does not change the nature or degree of the crime charged, if the accused is not surprised. *Wilson* v. *State*, 286 Ark. 430, 692 S.W.2d 620(1985). As the state points out, the amendment in this case did not change the nature or degree of the offense. Both the original information and the amended information charged appellant with first degree murder. The amendment changed only the *mens rea* to conform to the homicide statute in effect at the time the crime was committed.

Furthermore, appellant made a strategic decision not to request a continuance so that he would not toll the time for speedy

trial purposes. We have previously held that we will not presume prejudice when an appellant fails to move for a continuance after he is put on notice that the state plans to amend the information. *Mitchell* v. *State,* 306 Ark. 483, 815 S.W.2d 922 (1991); *Harrison* v. *State,* 287 Ark. 102, 696 S.W.2d 501 (1985). In this case, there is no indication that appellant knew of the intended amendment. However, when appellant objected to the amendment, the trial court asked appellant if he wanted a continuance and appellant responded in the negative. As the amendment did not change the nature or degree of the offense and as there was no prejudice demonstrated because of the failure to request a continuance, we cannot say the trial court erred in allowing the amendment.

As his next point of error, appellant asserts the trial court abused its discretion in restricting appellant's cross-examination of Jerry Hamilton. Specifically, appellant asserts the trial court violated his right to confrontation by not allowing appellant's counsel to question Hamilton about an alleged thirty-year plea agreement in an unrelated case offered in exchange for his testimony against appellant. There was some confusion between the two prosecutors as to whether or not the offer to Hamilton of the thirty-year agreement, which was extended prior to the state's knowledge of Hamilton's possible testimony against appellant, had been withdrawn by the state. However, there was no dispute, by either the state or the defense, that the withdrawal of the offer had not been communicated to Hamilton. Based on the foregoing information revealed in a bench conference, the trial court concluded the thirty-year plea agreement no longer existed and the defense could therefore not question Hamilton on that particular agreement. However, the trial court went on to suggest that appellant would be allowed to ask Hamilton if he presently had a plea bargain agreement with the state. Appellant chose not to ask such a question, but did ask approximately eight questions concerning Hamilton's hope that his testimony be exchanged for leniency in his pending sentence.

In *Bowden* v. *State,* 301 Ark. 303, 783 S.W.2d 842 (1990), we recently reviewed the issue of a trial court's restrictions on cross-examination. There we stated that the right to cross-examine the state's witnesses is not unlimited and that trial courts have wide discretion in imposing reasonable limits on

cross-examination. In order to determine whether the restrictions placed on the right to cross-examine a witness rise to the level of a constitutional deprivation, we must look to the record as a whole and resolve whether the restrictions imposed created a substantial danger of prejudice to appellant. *Id.* We have done so, and in light of the questions that were asked regarding leniency, we fail to see any prejudice to appellant.

As his final argument, appellant asserts the jury was prejudiced by the state's repeated attempts to elicit from witnesses irrelevant evidence of drug and gang activity. Appellant relies on *Sharron v. State,* 262 Ark. 320, 565 S.W.2d 438 (1977), where we reversed and remanded for a new trial when the prosecutor withdrew six of eight questions that received sustaining objections.

Specifically, appellant complains of three occasions where such evidence was elicited. Two occasions occurred during Officer Huff's testimony. On the first occasion, Officer Huff was asked how he was aware of who appellant and John Paries were. The officer then answered that he knew them through his investigations in drug trafficking in Texarkana. Appellant's objection to the foregoing answer was sustained and the jury was instructed to disregard the testimony. On the second occasion, Officer Huff was allowed to testify, over appellant's objection, about his specialized training in cult or gang activity in California and Texarkana. The third occasion appellant complains of occurred during John Paries' testimony. Paries was asked if he ever knew appellant to deal drugs, appellant objected, and the trial court sustained the objection.

Appellant has not convinced us that the questions he objected to were improper. In *Snell v. State,* 290 Ark. 503, 516-17, 721 S.W.2d 628, 636 (1986), *cert. denied,* 484 U.S. 872 (1987), *and* 490 U.S. 1075 (1989), we held that testimony about Snell's involvement with the organization entitled "The Covenant, The Sword, and the Arm of the Lord" was admissible under A.R.E. Rule 404 "to prove the existence of a larger plan, scheme, or conspiracy, of which the crime on trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, or his intention." While the particular facts of *Snell* and the organizational connection

involved there are arguably distinguishable from the facts of present case, there can be no doubt that the state is entitled to produce evidence "showing all circumstances which explain the act, show a motive for acting, or illustrate the accused's state of mind." *Richmond* v. *State*, 302 Ark. 498, 503, 791 S.W.2d 691, 694 (1990). The evidence appellant complains of is relevant to explain the circumstances of the murder and shows both a motive and appellant's state of mind. Appellant has not demonstrated that any possible prejudice resulting from admission of this evidence substantially outweighs its probative value.

■■■■ Assuming that we were to conclude that the evidence in question was inadmissible, we are not convinced that the present case rises to the level of *Sharron*, 262 Ark. 320, 556 S.W.2d 438. Generally, the error caused by admission of improper evidence is cured by sustaining an objection thereto, followed by an admonition to the jury to disregard it. *Id.* Here, appellant complains of only three instances where the questioned evidence arose; the objections to two of those instances were sustained and the jury was admonished once. We cannot conclude that such conduct put the prosecutor on notice that he was asking improper questions sufficient to warrant a new trial. *See id.* The sustained objections and admonitions to the jury were adequate to correct any error that may have occurred in the questioning.

■■ In support of this final argument, appellant also relies on *Dawson* v. *Delaware*, ___ U.S. ___, 112 S. Ct. 1093 (1992), which held that Dawson's First and Fourteenth Amendment rights were violated by admission of evidence that he belonged to a white racist prison gang, because the evidence had no relevance to the proceedings. Appellant did not produce an abstract showing that he raised the violation of his First and Fourteenth Amendment rights below. We do not address arguments, even constitutional ones, which are raised for the first time on appeal. *Collins* v. *State*, 308 Ark. 536, 836 S.W.2d 231 (1992).

Pursuant to Ark. Sup. Ct. R. 11(f), appellee has made certain that all objections decided adversely to appellant have been abstracted. We have determined that no issues of prejudicial error existed.

Affirmed.